E-filing

*File by Fax*

PETER J. SALMON (SBN 174386)
THOMAS N. ABBOTT (SBN 245568)
PITE DUNCAN, LLP
4375 JUTLAND DRIVE, SUITE 200
P.O. BOX 17935
SAN DIEGO, CA 92177-0935
TELEPHONE: (858) 750-7600
FACSIMILE: (619) 590-1385
E-Mail: tabbott@piteduncan.com

FILED
APR 2 1 2011
RICHARD W. WIEKING
K. U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

Attorneys for Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION
[*erroneously sued as FEDERAL HOME LOAN MORTGAGE CORPORATION, a Federally chartered corporation doing business as FREDDIE MAC*]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION

| | |
|---|---|
| ROBERTA SOHAL and MICHAEL W. WRIGHT,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL HOME LOAN MORTGAGE CORPORATION, a Federally chartered corporation doing business as FREDDIE MAC, WELLS FARGO BANK, N.A., a Federally chartered national association, CAL-WESTERN RECONVEYANCE CORPORATION, a California corporation, LSI TITLE COMPANY, a California corporation, and DOES 1 through 10, INCLUSIVE,<br><br>Defendants. | Case No. **C11-01941**<br><br>**NOTICE OF REMOVAL OF ACTION**<br><br>[**12 U.S.C. § 1452(f)**] |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. § 1331 & 1442, and 12 U.S.C. § 1452(f), Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION ("Freddie Mac") hereby gives notice of the removal of this action from the Superior Court of California in and for Alameda County, where it was pending, to the United States District Court for the Northern District of California. As grounds for this removal, Freddie Mac shows unto the Court the following:

1.    The Plaintiffs ROBERTA SOHAL and MICHAEL W. WRIGHT, commenced this action against Freddie Mac and others in the Superior Court of California in and for Alameda

1 | County, on or about April 13, 2011 as Case No. RG11570732 ("State Court Action"). Plaintiffs'
2 | Complaint alleges various causes of action against Freddie Mac and others in connection with certain
3 | real property known as 8552 Briarwood Lane, Dublin, CA 94568.

4 |      2.     Freddie Mac is a United States corporation chartered by an Act of Congress organized
5 | and existing under the Federal Home Loan Mortgage Corporation Act, 12 U.S.C. § 1451, et seq.,
6 | with its principal place of business located in McLean, Virginia.

7 |      3.     12 U.S.C. § 1452(f) provides that Freddie Mac "shall be deemed to be an agency
8 | included in sections 1345 and 1442 of such Title 28." Section 1452(f) of Title 12 further provides,
9 | in pertinent part, that any civil action in a state court to which Freddie Mac is a party may, at any
10 | time before trial, be removed to the appropriate United States District Court.

11 |      4.     28 U.S.C. § 1442(a) does not require Freddie Mac to notify or obtain the consent of
12 | any other defendant in this action in order to remove the entire case to federal court. See 28 U.S.C.
13 | 1442(a); Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1253 (9th Cir. 2006) (stating that
14 | "[w]hereas all defendants must consent to removal under section 1441..., a federal officer or agency
15 | defendant can unilaterally remove a case under section 1442...") (citations omitted); Ely Valley
16 | Mines, Inc. v. Hartford Accident & Indemnity Co., 644 F. 2d 1310, 1315 (9th Cir. 1981) (stating that
17 | "§ 1442 represents an exception to the general rule (under §§ 1441 and 1446) that all defendants
18 | must join in the removal petition").

19 |      5.     Freddie Mac is a party to the State Court Action as referenced above, and no trial of
20 | the action has yet taken place. The United States District Court for the Northern District of
21 | California is the federal judicial district and division embracing Alameda County in which the
22 | property at issue in this case is situated. See 28 U.S.C. § 84(a). Freddie Mac is therefore entitled
23 | to remove that action to this Court. Attached hereto as **Exhibit A,** and incorporated by reference
24 | herein, are copies of all records and proceedings from the State Court.

25 |      6.     Concurrently with the filing of this Notice of Removal, by means of the Notice to
26 | Adverse Parties of Removal filed in the State Court Action and attached hereto as **Exhibit B**,
27 | Freddie Mac is giving written notice to all known parties, and to the Superior Court of California in
28 | and for Alameda County, of (i) this removal; (ii) the fact that this case is to be docketed in this Court;

1 | and (iii) that this Court shall hereafter be entitled to grant all relief to Freddie Mac as is proper under

2 | the circumstances, all in accordance with 12 U.S.C. § 1452 and such local rules as may be

3 | applicable.

4 | Respectfully Submitted,

5 | Dated: April 20, 2011               PITE DUNCAN, LLP

6 |

7 | /s/ Thomas N. Abbott
   Attorneys for Defendant FEDERAL HOME LOAN

8 | MORTGAGE CORPORATION [*erroneously sued as FEDERAL HOME LOAN MORTGAGE*

9 | *CORPORATION, a Federally chartered corporation doing business as FREDDIE MAC*]

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

-3-
NOTICE OF REMOVAL OF ACTION                                   2385588.wpd

# EXHIBIT A

1 | **Phillip G. Vermont, SBN 132035**
**Patrick E. Guevara, SBN 202727**
2 | **RANDICK O'DEA & TOOLIATOS, LLP**
5000 Hopyard Road, Suite 400
3 | Pleasanton, California 94588
Telephone    (925) 460-3700
4 | Facsimile    (925) 460-0969

**ENDORSED**
**FILED**
**ALAMEDA COUNTY**

APR 1 3 2011

5 | Attorneys for Plaintiffs ROBERTA SOHAL and
MICHAEL W. WRIGHT

CLERK OF THE SUPERIOR COURT
By **LYNN WILEY**

6 |

Deputy

7 |

8 | **SUPERIOR COURT OF CALIFORNIA**

9 | **COUNTY OF ALAMEDA**

10 |

11 |

12 | ROBERTA SOHAL and MICHAEL W.
WRIGHT,

Case No.:    **RG11570732**

**COMPLAINT FOR:**

13 | Plaintiffs,

**1. WRONGFUL FORECLOSURE;**

14 | vs.

**2. BREACH OF ORAL CONTRACT;**

15 | FEDERAL HOME LOAN MORTGAGE
CORPORATION, a Federally chartered
16 | corporation doing business as FREDDIE
MAC, WELLS FARGO BANK, N.A., a
17 | Federally chartered national association,
CAL-WESTERN RECONVEYANCE
18 | CORPORATION, a California
corporation, LSI TITLE COMPANY, a
19 | California corporation, and DOES 1
through 10, INCLUSIVE,
20 |

Defendants.

21 |

22 |

23 |

24 |

**3. PROMISSORY ESTOPPEL;**

**4. FRAUD;**

**5. NEGLIGENT MISREPRESENTATION;**

**6. LENDER NEGLIGENCE;**

**7. TRUSTEE NEGLIGENCE;**

**8. VIOLATION OF CALIFORNIA**
**BUSINESS AND PROFESSIONS CODE**
**SECTION 17200 *ET SEQ*;**

**9. SETTING ASIDE TRUSTEE SALE; AND**

**10. QUIET TITLE.**

25 |

26 | Plaintiffs ROBERTA SOHAL and MICHAEL W. WRIGHT (collectively, "Plaintiffs")

27 | hereby allege as follows:

28 |     1.    Plaintiffs are each individuals residing in Pleasanton, California.

1

1    2.    Plaintiffs operate the ANGELS ILIE & MARIA GOLDEN AGE CARE, a
2  California-licensed Residential Care Facility for the Elderly ("RCFE"), at the real property
3  known as 8552 Briarwood Lane, Dublin, California (the "Property").

4    3.    Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION d/b/a
5  FREDDIE MAC ("Freddie Mac") is a Federally chartered corporation doing business in
6  California.  Freddie Mac is one of the two United States government sponsored enterprises that
7  purchases mortgage loans and guarantees mortgage-related securities.

8    4.    Defendant WELLS FARGO BANK, N.A. ("Wells Fargo") is a Federally
9  chartered national association doing business in California and is the largest mortgage loan
10  originator in the United States.

11    5.    Defendants Freddie Mac and Wells Fargo are parties with and/or agents of the
12  United States in a comprehensive home loan modification agreement and program called "Home
13  Affordable Mortgage Program" or "HAMP" under the Federal Emergency Economic
14  Stabilization Act of 2008.

15    6.    Defendant CAL-WESTERN RECONVEYANCE CORPORATION ("CWRC") is
16  a California corporation doing business in California and provides foreclosure, reconveyance,
17  and post-foreclosure services to the largest lenders, including Wells Fargo.

18    7.    Defendant LSI TITLE COMPANY ("LSI") is a California corporation doing
19  business in California and provides lender processing services, including "signing services."

20    8.    Plaintiffs are ignorant of the true names and capacities of the defendants sued
21  herein as DOES 1 through 10 and, therefore, sue these defendants by these fictitious names.
22  Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

23    9.    Defendants sued herein as DOES 1 through 10 are contractually, strictly,
24  negligently, intentionally, or vicariously liable or otherwise legally responsible in some manner
25  for each and every act, omission, obligation, or event set forth in this complaint, and that each
26  fictitiously named defendants is indebted to Plaintiffs as alleged herein.

27    10.    The use of the term "Defendants" in any of the allegations in this Complaint,
28  unless specifically otherwise set forth, is intended to include and charge both jointly and

2

1  severally, not only named Defendants, but all Defendants designated as well.

2      11.    Plaintiffs are informed and believe and thereon allege that, at all times mentioned

3  herein, Defendants were agents, servants, employees, alter egos, superiors, successors in interest,

4  joint venturers and/ or co-conspirators of each of their co-defendants and in doing the things

5  mentioned in this Complaint, or acting within the course and scope of their authority of such

6  agents, servants, employees, alter egos, superiors, successors in interest, joint venturers and/ or

7  coconspirators with the permission and consent of their co-defendants and, consequently, each

8  defendant named herein, and those defendants named herein as DOES 1 through 10, inclusive,

9  are jointly and severally liable to Plaintiffs for the damages and harm sustained as a result of

10  their wrongful conduct.

11      12.    Defendants, and each of them, aided and abetted, encouraged, and rendered

12  substantial assistance to the other defendants in breaching their obligations to Plaintiffs, as

13  alleged herein. In taking action, as alleged herein, to aid and abet and substantially assist the

14  commissions of these wrongful acts and other wrongdoings complained of, each of the

15  defendants acted with an awareness of its primary wrongdoing and realized that its conduct

16  would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and

17  wrongdoing.

18      13.    Defendants, and each of them, knowingly and willfully conspired, engaged in a

19  common enterprise, and engaged in a common course of conduct to accomplish the wrongs

20  complained of herein. The purpose and effect of the conspiracy, common enterprise, and

21  common course of conduct complained of was, *inter alia*, to financially benefit defendants at the

22  expense of Plaintiffs by engaging in fraudulent activities. Defendants accomplished their

23  conspiracy, common enterprise, and common course of conduct by misrepresenting and

24  concealing material information regarding the servicing of loans, and by taking steps and making

25  statements in furtherance of their wrongdoing as specified herein. Each Defendant was a direct,

26  necessary and substantial participant in the conspiracy, common enterprise and common course

27  of conduct complained of herein, and was aware of its overall contribution to and furtherance

28  thereof. Defendants' wrongful acts include, *inter alia*, all of the acts that each of them are alleged

3

1  to have committed in furtherance of the wrongful conduct of complained of herein.

2      14.      Any applicable statutes of limitations have been tolled by the Defendants'
3  continuing, knowing, and active concealment of the facts alleged herein. Despite exercising
4  reasonable diligence, Plaintiffs could not have discovered, did not discover, and was prevented
5  from discovering, the wrongdoing complained of herein.

6      15.      In the alternative, Defendants should be estopped from relying on any statutes of
7  limitations. Defendants have been under a continuing duty to disclose the true character, nature,
8  and quality of their financial services and debt collection practices. Defendants owed each of the
9  Plaintiffs an affirmative duty of full and fair disclosure, but knowingly failed to honor and
10  discharge such duty.

11                                **INTRODUCTION**

12     16.      Plaintiffs purchased the Property for $715,000.00 on or around December 17,
13  2007 to care for and house underserved and vulnerable elderly individuals suffering from
14  dementia and/or Alzheimer's disease.  Attached herein as Exhibit A and incorporated into this
15  Complaint is a true and correct copy of the Grant Deed transferring title of the Property to the
16  Plaintiffs.

17     17.      A portion of the Property purchase price ($417,000.00) was financed by a
18  purchase money home loan originated by Wells Fargo (Loan Number 0174039214)(the "Loan")
19  secured by a Deed of Trust dated December 11, 2007 (the "Deed of Trust"). Attached herein as
20  Exhibit B and incorporated into this Complaint is a true and correct copy of the Deed of Trust.

21     18.      Plaintiffs also financed $150,000.00 of the purchase price though a home equity
22  line of credit with Wells Fargo (the "HELOC").

23     19.      Due to cutbacks in Plaintiff MICHAEL WRIGHT's work schedule on or around
24  2009 and unforeseen delays from collecting sufficient rent from the RCFE residents, Plaintiffs
25  were unable to make the scheduled monthly Loan payments to Wells Fargo.  In early 2010,
26  Plaintiffs requested assistance from Wells Fargo to modify the terms of the Loan as well as the
27  HELOC.

28     20.      Wells Fargo represented to Plaintiffs that it cannot make any modification to the

4

HELOC terms until the Loan has been modified.

21. Around March 2010, Plaintiffs hired Ms. Taj Lockett d/b/a Foundation Loan Consulting (the "Consultant") to negotiate a loan modification with Wells Fargo on their behalf.

22. Beginning on March 2010, the Consultant communicated both in writing and by telephone with various Wells Fargo agents, each of whom consistently represented to her that Wells Fargo was willing, ready, and able to modify the Loan and that the Property would not be foreclosed upon. For example, on June 24, 2010, Wells Fargo representative Antwan (ID#D6T) told the Consultant that Wells Fargo was reviewing the Loan for modification. On July 30, 2010, Wells Fargo representative Samantha (ID#BE5) stated to the Consultant that no trustee sale date has been set and that Plaintiffs needed to send current bank statements and paycheck stubs. On August 27, 2010, Wells Fargo representative Debra (ID#PD0) called the Consultant requesting additional financial documents from Plaintiffs and also stated that no trustee sale date has been set.

23. On May 18, 2010, Freddie Mac confirmed in writing that it was the owner of the Loan. Attached herein as Exhibit C and incorporated into this Complaint is a true and correct copy of the Freddie Mac letter.

24. On or around September 22, 2010, CWRC recorded a Notice of Trustee's Sale with the trustee's sale scheduled for October 12, 2010 at 12:00 p.m. at the Court's location at 1225 Fallon Street, Oakland, California.

25. Wells Fargo and CWRC did not go forward with the scheduled trustee's sale as Plaintiffs continued to negotiate a loan modification to keep the Property.

26. On October 13, 2010, Wells Fargo counsel, Melody Simmons of Pite Duncan LLP, represented to Plaintiffs in writing that a trustee's sale of the Property was scheduled for November 12, 2010. Attached herein as Exhibit D and incorporated into this Complaint is a true and correct copy of the October 13, 2010 letter.

27. On October 19, 2010, Wells Fargo representative Jay (ID#J68) contacted the Consultant and stated that Plaintiffs were qualified for a loan modification and Wells Fargo will modify the Loan with monthly payments of $2,695.60 for 30 years to begin on February 1, 2011

5

1  provided that the Plaintiffs send a down payment of $5,000.00. Based on information and belief,

2  Plaintiffs were qualified for Wells Fargo's loan modification program.

3       28.     On October 20, 2010, Wells Fargo sent Plaintiffs a written request that, to

4  continue the loan modification process, Plaintiffs must send a down payment of $5,000.00,

5  which Plaintiffs immediately did. Attached herein as Exhibit E and incorporated into this

6  Complaint is a true and correct copy of the October 20, 2010 letter. Wells Fargo subsequently

7  deposited the $5,000.00 check into its accounts.

8       29.     On or around November 4, 2010, Plaintiffs provided Wells Fargo an updated

9  statement of the income and expenses relevant to the Property. At all relevant times, the

10  Plaintiffs' income exceeded expenses.

11      30.     Wells Fargo did not go forward with the November 12, 2010 trustee's sale it

12  noticed on its October 13, 2010 letter.

13      31.     On or around November 20, 2010, a Wells Fargo representative called Plaintiff

14  MICHAEL WRIGHT, demanded that he make a payment on the HELOC, and stated that, if he

15  did so, Wells Fargo would not foreclose on the Property. In response to this representation,

16  Plaintiffs made a payment on the HELOC of $1,050.00 on November 29, 2010.

17      32.     On or around December 10, 2010, a Wells Fargo representative called Plaintiff

18  MICHAEL WRIGHT, demanded that he make a payment on the HELOC, and stated that, if he

19  did so, Wells Fargo would not foreclose on the Property. In response to this representation,

20  Plaintiffs made a payment on the HELOC of $869.85 on December 17, 2010.

21      33.     On December 17, 2010, Plaintiffs found out that Wells Fargo disputed Plaintiffs'

22  monthly household income and expense calculations. Wells Fargo was claiming that Plaintiffs'

23  expenses exceeded their income by $4,000, therefore, they did not allegedly qualify for a loan

24  modification. Wells Fargo did not nor could not provide Plaintiffs a basis for its calculation.

25      34.     On several phone calls with Wells Fargo representatives around December 28,

26  2010, Consultant discussed the Plaintiffs' income and expense calculations and confirmed their

27  accuracy in that the Plaintiffs' income exceeded expenses by a reasonable margin. Wells Fargo

28  representatives were unable to explain that basis of the alleged $4,000 deficit. Thereafter,

6

1  Plaintiffs were notified by Wells Fargo that the loan modification process was moving forward.

2  The December 28, 2010 call was followed up with typical form letters by Wells Fargo requesting

3  the identical financial information that Plaintiffs already provided Wells Fargo in numerous

4  occasions including on November 4, 2010.

5       35.     On January 3, 2011, Plaintiffs were informed by Wells Fargo that it was in the

6  process of reviewing the loan modification application and that no trustee's sale date was

7  scheduled.

8       36.     On January 11, 2011, the Consultant spoke with Wells Fargo representative Kevin

9  (ID#K58), who stated that no trustee's sale was scheduled and that Plaintiffs need to send yet

10  more of the same financial information it already provided Wells Fargo.  After Consultant

11  forwarded the updated information to Wells Fargo, she immediately called Wells Fargo and

12  spoke with Titia from Wells Fargo's foreclosure department, who stated that a "work order" was

13  entered, the trustee's sale was halted, and that the loan modification was moving forward.

14       37.     On January 13, 2011 at around 9:40 am, the Consultant again called Wells Fargo

15  for status and was informed that the "work order" was active and the trustee's sale was halted.

16       38.     Without providing Plaintiffs any notice, written or oral, CWRC purportedly sold

17  the Property at auction for $426,370.09 and assigned the Deed of Trust to Freddie Mac on

18  January 13, 2011.

19                  **RESIDENTIAL CARE FACILITY FOR THE ELDERLY**

20       39.     Plaintiff ROBERTA SOHAL is the member and manager of X Pizza LLC, a

21  Nevada limited liability company doing business as ANGELS ILIE & MARIA GOLDEN AGE

22  CARE ("Angels").

23       40.     Angels is licensed by the California Department of Social Services (Facility No.:

24  015601395) to operate a Residential Care Facility for the Elderly at the Property.

25       41.     Angels specializes in caring for elder residents suffering from dementia or

26  Alzheimer's Disease.

27       42.     Angels entered into Assisted Living Care Agreements with each resident or their

28  guardians to provide living facilities and full-time assisted living care at the Property.

7

1       43.    Angels currently houses five residents from 83 to 97 years old, each suffering

2  from some form of dementia or Alzheimer's Disease (collectively, the "Residents"). All the

3  Residents are currently non-ambulatory.

4       44.    The Property has been renovated and equipped specifically to house and care for

5  elder residents with dementia and/or Alzheimer's Disease.

6       45.    Due to the continued adverse economic conditions in California, Plaintiffs ran

7  into cash flow problems with collecting rent from residents; therefore, they were unable to keep

8  up with the monthly Loan payments.

9       46.    As Plaintiffs felt that the Angels service was the right thing to do for a vulnerable

10  and underserved aging population, they approached Wells Fargo for a loan modification in order

11  to keep Angels open.

12      47.    Plaintiffs were led to believe by Wells Fargo though, *inter alia*, its numerous

13  letters, demands for payments on the HELOC, requests to send and resend financial information,

14  and various written and oral representations, that it was willing to work with them to keep

15  Angels open through a loan modification until Plaintiffs suddenly and unexpectedly received an

16  eviction demand from Freddie Mac.

17      48.    Plaintiffs and the vulnerable Residents are but some of the numerous victims of

18  the widespread epidemic of loan modification and robo-signing fraud perpetrated by the Nation's

19  largest lenders. To add insult to the Plaintiffs' injuries, Wells Fargo and Freddie Mac were the

20  same lenders that were bailed out by taxpayers such as the Plaintiffs.

21                            **FORECLOSURE OF THE PROPERTY**

22      49.    Section 24 of the Deed of Trust explicitly states, in relevant part, that "Lender, at

23  its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder

24  by an instrument executed and acknowledged by Lender and recorded in the office of the

25  Recorder of the county in which the Property is located. The instrument shall contain the name

26  of the original Lender, Trustee and Borrower, the book and page where this Security instrument

27  is recorded and the name and address of the successor trustee....This procedure for substitution

28  of trustee shall govern to the exclusion of all other provisions for substitution." The Trustee

<div align="right">8</div>

1  appointed in the Deed of Trust is Fidelity National Title Insurance Company ("Fidelity").

2  Fidelity was not named on any instrument purportedly substituting it as trustee. Fidelity was not

3  properly substituted under the procedures of Section 24 of the Deed of Trust and did not initiate,

4  notice, nor conduct any foreclosure sales of the Property.

5        50.    On June 21, 2010, a Notice of Default under the Deed of Trust was recorded. The

6  signature block of the Notice of Default states that it was signed by "D. Guajardo, LSI Title

7  Company, as Agent" on June 19, 2010. A true and correct copy of the Notice of Default is

8  attached and incorporated hereto as Exhibit F. Upon information and belief, no power of attorney

9  or any other agency agreement was executed and recorded in connection with this Notice of

10  Default.

11        51.    Based on information and belief, the Notice of Default was "robo-signed,"

12  namely, it was forged, backdated, and/or signed without reviewing or having actual knowledge

13  of the facts attested to.

14        52.    Thereafter, on August 24, 2010, CWRC recorded a Substitution of Trustee

15  appointing itself as the successor trustee under the Deed of Trust. The Substitution instrument

16  was allegedly signed by "Lorrie Womack, Assistant Vice President, Cal-Western Reconveyance

17  Corporation as Attorney-In-Fact [for Wells Fargo Bank, N.A.]" on June 11, 2010. It was not

18  notarized until two months later on August 16, 2010, long after the Notice of Default was

19  recorded. A true and correct copy of said Substitution of Trustee is attached and incorporated

20  hereto as Exhibit G. No power of attorney or any other agency agreement was executed and

21  recorded in connection with this Substitution of Trustee.

22        53.    Based on information and belief, the Substitution of Trustee was "robo-signed,"

23  namely it was forged, backdated, and/or signed without reviewing or having actual knowledge of

24  the facts attested to.

25        54.    On September 22, 2010, CWRC recorded a Notice of Trustee's Sale with a

26  trustee's sale of the Property scheduled for noon, October 12, 2010 (the "Noticed Date") before

27  this Court's front steps at 1225 Fallon Street, Oakland, California ("Noticed Location"). A true

28  and correct copy of said Notice of Trustee's Sale is attached and incorporated hereto as Exhibit

9

1   H.

2        55.    Based on information and belief, the Notice of Trustee's Sale was "robo-signed,"

3   namely, it was forged, backdated, and/or signed without reviewing or having actual knowledge

4   of the facts attested to.

5        56.    CWRC did not conduct a trustee's sale of the Property on the Noticed Date at the

6   Noticed Location.

7        57.    Based on information and belief, CWRC <u>did not</u> publicly announce on the

8   Noticed Date at the Noticed Location that the trustee's sale of the Property was postponed, the

9   reason for the postponement, and that the postponed sale would thereafter occur on January 13,

10  2011 or any other date.

11       58.    Based on information and belief, CWRC <u>did not</u> publicly announce on November

12  12, 2010 at the Noticed Location that the trustee's sale of the Property was postponed, the reason

13  for the postponement, and that the postponed sale would thereafter occur on January 13, 2011 or

14  any other date.

15       59.    On January 13, 2011, defendant CWRC purported to grant title to the Property

16  under the Deed of Trust to Freddie Mac, as the alleged "highest bidder" at the alleged auction of

17  the Property. A true and correct copy of CWRC's Assignment of the Deed of Trust is attached

18  and incorporated hereto as <u>Exhibit I</u>.   A true and correct copy of the Trustee's Deed Upon Sale

19  is attached and incorporated hereto as <u>Exhibit J</u>.   As indicated in these instruments, Freddie Mac

20  allegedly paid CWRC \$426,370.09, which is well below the market value of the Property (a

21  well-maintained 7 bedroom, 4 bathroom, 2404 square foot home in Dublin, California).

22       60.    Based on information and belief, the Assignment of the Deed of Trust and

23  Trustee's Deed Upon Sale were "robo-signed," namely they were forged, backdated, and/or

24  signed without reviewing or having actual knowledge of the facts attested to.

25       61.    CWRC representative, Melody, stated to Plaintiff MICHAEL WRIGHT on or

26  around January 18, 2011 that the Property did not sell to any third party and that it was now

27  owned by Wells Fargo.

28       62.    Freddie Mac served a Notice to Quit for the eviction of Plaintiffs from the

                                                                                                                     10

1  Property around February 1, 2011, and thereafter instituted an eviction action before this Court
2  on April 7, 2011. A true and correct copy of the complaint for the eviction action by Freddie Mac
3  is attached and incorporated hereto as Exhibit K.

4       63.   Freddie Mac's eviction action would result in the closing of Angels and one less
5  facility to serve elderly residents suffering from dementia and Alzheimer's disease.
6  Alternatively, by evicting only Plaintiffs from the Property, Freddie Mac is unilaterally taking
7  assignment of the Angels RCFE, its license, and all its obligations under California law without
8  providing fair and reasonable notice and consideration to Plaintiffs and the Residents. A true and
9  correct copy of the RCFE license is attached and incorporated hereto as Exhibit L.

10  ## I.   FIRST CAUSE OF ACTION FOR WRONGFUL FORECLOSURE AGAINST ALL DEFENDANTS

12       64.   Plaintiffs incorporate herein by reference the allegations made in paragraphs 1
13  through 63, inclusive, as though fully set forth herein.

14       65.   Defendants are liable to Plaintiffs for wrongful foreclosure under Civil Code
15  Sections 2924 *et seq*.

16       66.   After the origination and funding of the Loan, it was sold or transferred to
17  investors or other entities, including Freddie Mac; therefore, Wells Fargo did not own the Loan
18  or the corresponding note during the January 13, 2011 trustee sale.

19       67.   At all times relevant to the non-judicial proceedings relating to the Property,
20  Wells Fargo did not own an interest in the Property and did not have standing to foreclose upon
21  it.

22       68.   Freddie Mac owned the Loan, including the underlying note, and was the true
23  beneficiary or "Lender" under the Deed of Trust at all times relevant to the non-judicial
24  foreclosure of the Property.

25       69.   Neither CWRC nor LSI was lawfully appointed as the Trustee under the Deed of
26  Trust. Accordingly, neither CWRC nor LSI had the right to declare default, to cause the Notice
27  of Default to be issued and recorded, nor to foreclose on Plaintiff's interest in the Property.

28       70.   At all times relevant to the non-judicial proceedings relating to the Property,

11

1   Wells Fargo was not a beneficiary or "Lender" under the Deed of Trust and neither CWRC nor
2   LSI were appointed agents of the true beneficiary, Freddie Mac. Furthermore, Wells Fargo,
3   CWRC, and LSI failed to record any powers of attorney concurrently with the Notice of Default
4   and the Substitution of Trustee.

5       71.     Pursuant to an agreement between Plaintiffs and Wells Fargo, the trustee sale
6   scheduled for October 13, 2010 and declared in the Notice of Trustee's Sale was cancelled in
7   order to facilitate a loan modification.

8       72.     None of the Defendants gave proper notice of the postponement of the noticed
9   October 13, 2010 trustee sale under Civil Code Section 2924g(d).

10      73.     Pursuant to an agreement between Plaintiffs and Wells Fargo, the trustee sale
11  scheduled for November 12, 2010 was cancelled in order to facilitate a loan modification.

12      74.     None of the Defendants gave proper notice of the postponement of the November
13  12, 2010 trustee sale under Civil Code Section 2924g(d).

14      75.     Defendants engaged in a fraudulent foreclosure of the Property in that Wells
15  Fargo, CWRC, and LSI did not have standing nor authority to foreclose on the Property.
16  Alternatively, if they had standing and authority, they failed to comply with the non-judicial
17  foreclosure procedures of Civil Code Section 2924 *et seq*.

18      76.     Freddie Mac was not a bona fide purchaser of the Property under the Trustee's
19  Deed Upon Sale because Freddie Mac was the true beneficiary or "Lender" under the Deed of
20  Trust, had actual or constructive notice that the non-judicial foreclosure was invalid, and had
21  actual or constructive notice that Plaintiffs reasonably believed the Loan would be modified and
22  the Property would not be foreclosed.

23      77.     As a result of the above-described wrongful conduct by Defendants, Plaintiffs
24  have suffered general and special damages in an amount according to proof at trial.

25      78.     To the extent that Defendants are permitted to evict Plaintiffs and the Residents
26  from the Property, Plaintiffs will be irreparably harmed and the economic damages to Plaintiffs
27  will be difficult to quantify. Moreover, Defendants will not be able to compensate Plaintiffs for
28  the wrongful transfer of title to the Property. Plaintiffs have no adequate remedy at law.

12

1  **II.  SECOND CAUSE OF ACTION FOR BREACH OF ORAL CONTRACT
      AGAINST DEFENDANTS WELLS FARGO AND FREDDIE MAC**

2

3      79.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1

4  through 78, inclusive, as though fully set forth herein.

5      80.    Shortly before October 13, 2010, Plaintiffs and Wells Fargo orally agreed to

6  cancel the noticed trustee's sale of October 13, 2011 so that the parties can complete the loan

7  modification process. Thereafter, another trustee sale was scheduled for November 12, 2010.

8  Plaintiffs and Wells Fargo orally agreed to cancel this trustee's sale to facilitate the loan

9  modifications.

10     81.    On or around October 19, 2010, Plaintiffs and Wells Fargo orally agreed to a

11  modification of the Loan with monthly payments of $2,965.00 for thirty years provided: (a) that

12  Plaintiffs immediately pay a $5,000.00 down payment towards the modified Loan; (b) that

13  Plaintiffs are able to show that they can afford the modified monthly payments; and (c) that

14  Wells Fargo cease any further foreclosure proceedings.

15     82.    In the letter attached as Exhibit C to this Complaint, Wells Fargo represented to

16  Plaintiffs that its "goal is simple...to ensure that you have every opportunity to retain your

17  home." Defendant Freddie Mac represented the same goal on a publicly available webpage

18  located at http://www.freddiemac.com/avoidforeclosure/ (last visited on April 8, 2011) stating

19  that: "Neither Freddie Mac nor your bank wants your home – we want to work with you and

20  keep you in your home."

21     83.    Plaintiffs met all the requirements of the oral contract with Wells Fargo, including

22  providing financial statements showing they can afford the payments and sending a $5,000.00

23  down payment to Wells Fargo via Federal Express on October 22, 2010. Therefore, all

24  conditions required of Plaintiffs for Wells Fargo to cease foreclosure proceedings and modify the

25  Loan in writing were met.

26     84.    Wells Fargo breached the oral contract by allowing a trustee's sale of the Property

27  to go forward despite its continued assurances to Plaintiffs that the foreclosure proceedings were

28  halted.

13

1    85.    Wells Fargo acted as the servicer of the Loan that was assigned to Freddie Mac

2    and was acting as the agent for and under the authority of the true beneficiary under the Deed of

3    Trust, Freddie Mac.

4    86.    As a result of the above-described wrongful conduct by Wells Fargo and Freddie

5    Mac, Plaintiffs have suffered damages in an amount according to proof at trial.

6    87.    To the extent that Defendants are permitted to evict Plaintiffs and the Residents

7    from the Property, Plaintiffs will be irreparably harmed and the economic damages to Plaintiffs

8    will be difficult to quantify. Moreover, Wells Fargo and Freddie Mac will not be able to

9    compensate Plaintiffs for the wrongful transfer of title to the Property. Plaintiffs have no

10   adequate remedy at law.

11   **III. THIRD CAUSE OF ACTION FOR PROMISSORY ESTOPPEL
     AGAINST DEFENDANTS WELLS FARGO AND FREDDIE MAC**

12

13   88.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1

14   through 87, inclusive, as though fully set forth herein.

15   89.    Wells Fargo acted as the servicer of the Loan that was assigned to Freddie Mac

16   and was acting as the agent for and under the authority of the true beneficiary under the Deed of

17   Trust, Freddie Mac.

18   90.    Wells Fargo made numerous oral and written representations to Plaintiffs that it

19   was negotiating a loan modification in good faith, that it would not foreclose on the Property,

20   and that it would inform Plaintiffs of any scheduled trustee's sale.

21   91.    Plaintiff justifiably relied on Wells Fargo's written and oral representations herein

22   to their detriment. Moreover, had Plaintiffs known that the trustee's sale of the Property was not

23   halted, they could have taken legal action prior to the sale, including a Chapter 13 bankruptcy

24   which would have allowed Plaintiffs to bring the loan current through a plan of reorganization.

25   Additionally, Plaintiffs could have explored the possibility of marketing and selling the Property.

26   Accordingly, Wells Fargo and Freddie Mac are estopped from taking any action that was

27   contrary to the written and oral promises made to Plaintiffs.

28   92.    Furthermore, Plaintiffs justifiably relied on Wells Fargo's written and oral

14

1 │ representations herein and did not anticipate nor plan to relocate the Residents under California

2 │ laws and regulations relating to licensed elderly care facilities.

3 │ 93. As a result of the above-described wrongful conduct by Wells Fargo and Freddie

4 │ Mac, Plaintiffs have suffered general and special damages in an amount according to proof at

5 │ trial.

6 │ 94. To the extent that Defendants are permitted to evict Plaintiffs and the Residents

7 │ from the Property, Plaintiffs will be irreparably harmed and the economic damages to Plaintiffs

8 │ will be difficult to quantify. Moreover, Wells Fargo and Freddie Mac will not be able to

9 │ compensate Plaintiffs for the wrongful transfer of title to the Property. Plaintiffs have no

10 │ adequate remedy at law.

11 │ **IV. FOURTH CAUSE OF ACTION FOR FRAUD**
   │ **AGAINST ALL DEFENDANTS**

12 │

13 │ 95. Plaintiffs incorporate herein by reference the allegations made in paragraphs 1

14 │ through 94, inclusive, as though fully set forth herein.

15 │ 96. Wells Fargo, on behalf of itself and on behalf of Freddie Mac, made numerous

16 │ oral and written representations to Plaintiffs that it was ready, willing, and able to negotiate a

17 │ loan modification, that it intended to modify the Loan with monthly payments of $2,695.60 for

18 │ thirty years, and that the trustee's sale of the Property was halted.

19 │ 97. Defendants Wells Fargo, CWRC, and LSI made numerous representations in the

20 │ recorded instruments relating to the foreclosure sale of the Property that they followed all the

21 │ required procedures under the Deed of Trust and California law.

22 │ 98. On the February 1, 2011 Notice to Quit served upon Plaintiffs, Freddie Mac

23 │ represented to Plaintiffs that the Property "has been duly sold in accordance with Section 2924 of

24 │ the Civil Code of the State of California under the power of sale contained in the Deed of Trust

25 │ encumbering the property" and that the title to the Property "has been duly perfected."

26 │ 99. The statements and representations made by each of the Defendants alleged in this

27 │ Complaint were false.

28 │ 100. Each of the Defendants knew that their representations were false when they

15

VERIFIED COMPLAINT
231400_5.doc

1  made it, or that they made the representations recklessly and without regard for its truth.

2      101.    Each of the Defendants intended that Plaintiffs rely on their representations.

3      102.    Plaintiffs reasonably relied on each of the Defendants' representations and such

4  reliance has substantially caused Plaintiffs to suffer general and special damages in an amount

5  according to proof at trial. Additionally, each of the Defendants acted with malice, intent to

6  defraud and oppression; thus, Plaintiffs are entitled to an award of punitive damages.

7      103.    To the extent that Defendants are permitted to evict Plaintiffs and the Residents

8  from the Property, Plaintiffs will be irreparably harmed and the economic damages to Plaintiffs

9  will be difficult to quantify. Moreover, Defendants will not be able to compensate Plaintiffs for

10  the wrongful transfer of title to the Property. Plaintiffs have no adequate remedy at law.

11  **V.    FIFTH CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION**
   **AGAINST ALL DEFENDANTS**

12

13      104.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1

14  through 103, inclusive, as though fully set forth herein.

15      105.    Each of the Defendants made false oral and written recorded representations to

16  Plaintiffs as previously alleged in this Complaint.

17      106.    Each of the Defendants has no reasonable grounds for believing the

18  representations were true when made.

19      107.    Each of the Defendants intended that Plaintiffs rely on their representations.

20      108.    Plaintiffs reasonably relied on each of the Defendants' representations and such

21  reliance has substantially caused Plaintiffs to suffer general and special damages in an amount

22  according to proof at trial.

23      109.    To the extent that Defendants are permitted to evict Plaintiffs and the Residents

24  from the Property, Plaintiffs will be irreparably harmed and the economic damages to Plaintiffs

25  will be difficult to quantify. Moreover, Defendants will not be able to compensate Plaintiffs for

26  wrongful transfer of title to the Property.  Plaintiffs have no adequate remedy at law.

27

28

16

**VI. SIXTH CAUSE OF ACTION FOR NEGLIGENCE AGAINST DEFENDANTS WELLS FARGO AND FREDDIE MAC**

110. Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 109, inclusive, as though fully set forth herein.

111. At all times relevant herein, Wells Fargo and Freddie Mac, acting as Plaintiffs' lender and/or servicer, had a duty to exercise reasonable care and skill to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including accurately disclosing to Plaintiffs the status of any foreclosure actions taken by it or its agents, refraining from taking any action against Plaintiffs that it did not have the legal authority to do, and providing all relevant and accurate information regarding the Loan.

112. In taking the actions alleged above, and in failing to take the actions as alleged above, Wells Fargo and Freddie Mac breached their duty of care and skill to Plaintiffs in servicing the Loan by, among other things, failing to disclose to Plaintiffs that they were foreclosing on the Property while telling them the opposite, preparing and recording false documents, and foreclosing on the Property without having the legal authority and/or proper documentation to do so.

113. As a direct and proximate result of the above-described wrongful conduct by Wells Fargo and Freddie Mac, Plaintiffs have suffered general and special damages in an amount according to proof at trial.

114. To the extent that Defendants are permitted to evict Plaintiffs and the Residents from the Property, Plaintiffs will be irreparably harmed and the economic damages to Plaintiffs will be difficult to quantify. Moreover, Wells Fargo and Freddie Mac will not be able to compensate Plaintiffs for the wrongful transfer of title to the Property. Plaintiffs have no adequate remedy at law.

**VII. SEVENTH CAUSE OF ACTION FOR NEGLIGENCE AGAINST DEFENDANTS CWRC AND LSI**

115. Plaintiffs incorporate herein by reference the allegations made in paragraphs 1

17

VERIFIED COMPLAINT
231400_5.doc

1 through 114, inclusive, as though fully set forth herein.

2     116.    At all times relevant herein, CWRC and LSI, acting as the alleged trustees under
3 the Deed of Trust, but without the legal authority to do so, had a duty to exercise reasonable care
4 and skill to follow the procedures of the Deed of Trust as well as California law with regard to
5 non-judicial foreclosure proceedings.

6     117.    A trustee under a deed of trust is the agent for both the beneficiary and the
7 borrower in connection with a non-judicial foreclosure sale. Such a trustee has the duties to
8 conduct a sale under the deed of trust: (1) in strict compliance with the terms of the power
9 granted under the deed of trust; (2) be made fairly, openly, and reasonably; and (3) with due
10 diligence and sound discretion to protect the rights of the borrower.

11     118.    In taking the wrongful actions alleged above, CWRC and LSI, as the alleged
12 trustees under the Deed of Trust, breached their duties to Plaintiffs.

13     119.    As a direct and proximate result of the above-described wrongful conduct by
14 CWRC and LSI, Plaintiffs have suffered general and special damages in an amount according to
15 proof at trial.

16     120.    To the extent that Defendants are permitted to evict Plaintiffs and the Residents
17 from the Property, Plaintiffs will be irreparably harmed and the economic damages to Plaintiffs
18 will be difficult to quantify. Moreover, CWRC and LSI will not be able to compensate Plaintiffs
19 for the wrongful transfer of title to the Property. Plaintiffs have no adequate remedy at law.

20 **VIII. EIGHTH CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200 ET SEQ. AGAINST ALL DEFENDANTS**

22     121.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1
23 through 120, inclusive, as though fully set forth herein.

24     122.    Each of the Defendants' actions described in this Complaint constitute unlawful
25 and unfair business practices under Sections 17200 *et seq.* of the Business and Professions Code.

26     123.    Unless restrained and enjoined, Defendants will continue to commit such
27 unlawful and unfair business practices, and Plaintiffs will be irreparably harmed.

28

18

VERIFIED COMPLAINT
231400_5.doc

1

2

## IX. TENTH CAUSE OF ACTION FOR QUIET TITLE AGAINST DEFENDANT FREDDIE MAC

3      124.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1

4   through 123, inclusive, as though fully set forth herein.

5      125.    The alleged trustee's sale of January 13, 2011 was improperly held and the

6   Trustee's Deed Upon Sale was wrongfully executed, delivered, and recorded in violation of the

7   terms and conditions of the Deed of Trust, in violation of Civil Code Sections 2924 *et seq*., and

8   in violation of the duties and obligations of Wells Fargo and Freddie Mac, as the lenders and/or

9   servicers, and defendants CWRC and LSI, as purported trustees, owed to Plaintiffs.

10     126.    Freddie Mac had actual or constructive notice, during all times relevant to the

11  trustee's sale, of Plaintiffs' continued claim to the title in the Property.

12     127.    Freddie Mac had actual or constructive notice, during all times relevant to the

13  trustee's sale, of widespread "robo-signing" fraud perpetrated throughout the mortgage servicing

14  industry, including by servicers such as defendants Wells Fargo, CWRC, and LSI.

15     128.    Freddie Mac did not honestly believe it was acquiring good title, and if it did, its

16  ignorance of the other Defendants' fraud and misrepresentations to Plaintiffs is deliberate and

17  intentional.

18     129.    Freddie Mac was the true beneficiary under the Deed of Trust and it had actual or

19  constructive notice that the trustee's sale of January 13, 2011 was defective, invalid, fraudulent,

20  and unlawful.

21     130.    Freddie Mac did not actually bid for and purchase the Property at the January 13,

22  2011 trustee's sale consistent with Civil Code Section 2429 *et seq*. Even if it did so, it bid for

23  and purchased the Property with actual or constructive notice that the trustee's sale was

24  defective, invalid, fraudulent, and unlawful.

25     131.    Plaintiffs therefore seek a declaration from this Court that the trustee's sale of

26  January 13, 2011 be set aside and that the Trustee's Deed Upon Sale in defendant's Freddie

27  Mac's favor is void.

28

19

1

2

## X. TENTH CAUSE OF ACTION FOR QUIET TITLE AGAINST DEFENDANT FREDDIE MAC

3       132.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1

4    through 131, inclusive, as though fully set forth herein.

5       133.    Plaintiffs are at all times herein mentioned the owners and are entitled to

6    exclusive possession of the Property.

7       134.    Freddie Mac claims an interest in the Property adverse to Plaintiffs. However,

8    Freddie Mac's claim is without any right whatsoever, and it does not have legal or equitable

9    right, claim, or interest in the Property.

10      135.    Plaintiffs therefore seek a declaration from this Court that the title to the Property

11   is vested in Plaintiffs alone and that Freddie Mac be declared to have no estate, right, title or

12   interest in the subject property and that it be forever enjoined from asserting any estate, right,

13   title or interest in the Property adverse to Plaintiffs, including eviction of Plaintiffs or the Angels

14   residents from the Property.

15      136.    In the alternative, Plaintiffs seek a declaration from this Court that Freddie Mac is

16   the beneficiary or "Lender" under the Deed of Trust, the Loan is modified consistent with the

17   terms Wells Fargo promised to Plaintiffs above, Plaintiffs are not default on the Deed of Trust,

18   the trustee's sale of January 13, 2011 is set aside, and the Trustee's Deed Upon Sale is void.

19                              **PRAYER FOR RELIEF**

20      Wherefore, Plaintiffs pray for judgment against the Defendants and each of them, jointly

21   and severally, as follows:

22      1.      For a temporary, preliminary, and permanent order enjoining Freddie Mac from

23   evicting Plaintiffs and the Residents from the Property and from marketing and selling the

24   Property to any third parties.

25      2.      For a declaration of the rights and duties of the parties, specifically that the

26   foreclosure of the Property was wrongful and fraudulent, that the alleged trustee's sale of

27   January 13, 2011 be set aside, that the Trustee's Deed Upon Sale is void, that title to the Property

28   is vested in Plaintiffs subject to the Deed of Trust, that Plaintiffs are not in default of the Deed of

20

1  Trust, and that the Loan be modified with the terms promised by Wells Fargo to Plaintiffs;

2      3.     For compensatory, special, general and punitive damages according to proof

3  against all Defendants;

4      4.     Pursuant to Business and Professions Code Section 17203, that all Defendants,

5  their successors, agents, representatives, employees, and all persons who act in concert with

6  them be permanently enjoined from committing any unfair business practices in violation of

7  Section 17200, including, but not limited to, the violations alleged herein;

8      5.     For civil penalties pursuant to statute;

9      6.     For reasonable attorney's fees and costs;

10     7.     For reasonable costs of suit; and

11     8.     Such other and further relief as the Court deems proper.

12

13  Date:  April 12, 2011                    RANDICK O'DEA & TOOLIATOS, LLP

14

15                                   By:  _____
                                          Patrick E. Guevara
16

17

18

19

20

21

22

23

24

25

26

27

28

                                                                                21

1    Trust, and that the Loan be modified with the terms promised by Wells Fargo to Plaintiffs;

2        3.       For compensatory, special, general and punitive damages according to proof

3    against all Defendants;

4        4.       Pursuant to Business and Professions Code Section 17203, that all Defendants,

5    their successors, agents, representatives, employees, and all persons who act in concert with

6    them be permanently enjoined from committing any unfair business practices in violation of

7    Section 17200, including, but not limited to, the violations alleged herein;

8        5.       For civil penalties pursuant to statute;

9        6.       For reasonable attorney's fees and costs;

10        7.       For reasonable costs of suit; and

11        8.       Such other and further relief as the Court deems proper.

12

13    Date:   April 12, 2011                RANDICK O'DEA & TOOLIATOS, LLP

14

15                            By:

16                                 Patrick E. Guevara

17

18

19

20

21

22

23

24

25

26

27

28

                                                      21

1                              **VERIFICATION**

2       I am a plaintiff in this action. I have read the foregoing complaint and it is true of my own

3 knowledge, except as to those matters stated on information or belief, and as to those matters, I

4 believe it to be true.

5       I declare under penalty of perjury under the laws of the State of California that the

6 foregoing is true and correct. Executed April 12, 2011, in Pleasanton, California.

7

8                                  Roberta Sohal

9

10

11       I am a plaintiff in this action. I have read the foregoing complaint and it is true of my own

12 knowledge, except as to those matters stated on information or belief, and as to those matters, I

13 believe it to be true.

14       I declare under penalty of perjury under the laws of the State of California that the

15 foregoing is true and correct. Executed April 12, 2011, in Pleasanton, California.

16

17                                Michael W. Wright

18

19

20

21

22

23

24

25

26

27

28

                                                           22

1                                **VERIFICATION**

2        I am a plaintiff in this action. I have read the foregoing complaint and it is true of my own

3 knowledge, except as to those matters stated on information or belief, and as to those matters, I

4 believe it to be true.

5        I declare under penalty of perjury under the laws of the State of California that the

6 foregoing is true and correct. Executed April 12, 2011, in Pleasanton, California.

7

8                               Roberta Sohal

9

10

11        I am a plaintiff in this action. I have read the foregoing complaint and it is true of my own

12 knowledge, except as to those matters stated on information or belief, and as to those matters, I

13 believe it to be true.

14        I declare under penalty of perjury under the laws of the State of California that the

15 foregoing is true and correct. Executed April 12, 2011, in Pleasanton, California.

16

17                              Michael W. Wright

18

19

20

21

22

23

24

25

26

27

28

                                                                   22

# Exhibit A

**RECORDING REQUESTED BY:**
Chicago Title Company
Escrow No.: 07-58906270-SP
Locate No.: CACTI7701-7701-5589-0058906270
Title No.: 07-58906270-JK

**When Recorded Mail Document
and Tax Statement To:**
Michael W. Wright & Roberta Sohal
8552 Briarwood Lane
Dublin, CA 94568





2008001729     01/03/2008 08:30 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:          11.00
COUNTY TAX:            786.50

2     PGS

APN: 941-0186-071

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## GRANT DEED

**The undersigned grantor(s) declare(s)
Documentary transfer tax is $786.50**

[ x ] computed on full value of property conveyed, or
[   ] computed on full value less value of liens or encumbrances remaining at time of sale,
[   ] Unincorporated Area     City of **Dublin**,

**FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,**     Stephen Allan Wilhite and
Sandra Lee Wilhite, husband and wife as joint tenants

**hereby GRANT(S) to**     Michael W. Wright and Roberta Sohal, husband and wife , as community
                              property with right of survivorship
**the following described real property in the** City of **Dublin**, County of **Alameda**, State of **California**:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

DATED: December 17, 2007

STATE OF CALIFORNIA *Alameda*     )
COUNTY OF                              )
ON *12-26-07* before me,
*Suzanne Paris, notary public*
(here insert name and title of the officer), personally
appeared *Stephen Allan Wilhite*
*and Sandra Lee Wilhite*
~~personally known to me~~ (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted,
executed the instrument.

Witness my hand and official seal.

Signature _____ (Seal)

Stephen Allan Wilhite

Sandra Lee Wilhite

SUZANNE PARIS
COMM. # 1478510
NOTARY PUBLIC-CALIFORNIA
ALAMEDA COUNTY
COMM. EXP. MARCH 23, 2008

Suzanne Paris
#1478510
Alameda County
Exp. March 23, 2008

**MAIL TAX STATEMENTS AS DIRECTED ABOVE**

FD-213 (Rev 7/96)                              GRANT DEED
(grant)(08-07)



Escrow No.: 07-58906270-SP
Locate.No.: CACTI7701-7701-5589-0058906270
Title No.: 07-58906270-JK

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF DUBLIN, COUNTY OF ALAMEDA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

Lot 4, Block 7, Tract 2485, filed May 3, 1963, Map Book 46, pages 37 to 40, Alameda County Records

Excepting therefrom one- half of all oil, gas other hydrocarbon substances in and under or that may be produced from a depth below 500 feet of the surface of said land without right of entry upon the surface of said land for the purposes of mining, drilling exploring or extracting such oil, gas, and other hydrocarbon substances or other use or rights in or to any portion of the surface of said land to a depth of 500 feet below the surface thereof, as shone on the Deed to Pleasanton Ridge, Inc., recorded April 26, 1963, in Reel 866, Image 400.

APN: 941-0186-071

# Exhibit B



· Recording Requested By:

**WELLS FARGO BANK, N.A.**
**1401 WILLOW PASS RD #300**
**CONCORD, CA 94520-**

Return To:
**WELLS FARGO BANK, N.A.**
**FINAL DOCUMENTS X9999-01M**
**1000 BLUE GENTIAN ROAD**
**EAGAN, MN 55121-1663**
Prepared By:
**PROCESSING WHOLESALE**
**WELLS FARGO BANK, N.A.**
**1401 WILLOW PASS RD #300**
**CONCORD, CA 94520-**



2008001730    01/03/2008 08:30 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:    73.00

22    PGS

——————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

**0174039214**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **DECEMBER 11, 2007** , together with all Riders to this document.
**(B) "Borrower"** is
**MICHAEL W. WRIGHT AND ROBERTA SOHAL, HUSBAND AND WIFE**

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is **WELLS FARGO BANK, N.A.** .

Lender is a **National Association**
organized and existing under the laws of **THE UNITED STATES OF AMERICA** .

**CALIFORNIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Page 1 of 18        Initials: _____ M W

**FORM 3005    1/01**

SCA01    Rev 11/09/00

Lender's address is
**P. O. BOX 5137, DES MOINES, IA 50306-5137**
Lender is the beneficiary under this Security Instrument.

**(D) "Trustee"** is **FIDELITY NATIONAL TITLE INSURANCE COMPANY**

**(E) "Note "** means the promissory note signed by Borrower and dated **DECEMBER 11, 2007.**
The Note states that Borrower owes Lender **FOUR HUNDRED SEVENTEEN THOUSAND AND NO/100** Dollars
(U.S. $ .....**417,000.00**............) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **JANUARY 1, 2038**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☒ 1-4 Family Rider
☐ VA Rider ☐ Biweekly Payment Rider ☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that

SCA02 Rev 12/18/00 Page 2 of 18 Initials **FORM 3005 1/01**

governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA. **(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's convenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| **County** | of | **ALAMEDA** | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

Exhibit
**LEGAL DESCRIPTION IS ATTACHED HERETO AS SCHEDULE "A" AND MADE A PART HEREOF.**

## THIS IS A PURCHASE MONEY MORTGAGE.

Parcel ID Number:                                                                      which currently has the address of
**8552 BRIARWOOD LANE**                                                                                        [Street]
**DUBLIN**                                     [City] , California          **94568**          [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

SCA03   Rev 11/09/00              Page 3 of 18          Initials:              FORM 3005   1/01

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

SCA04    Rev 11/09/00                    Page 4 of 18              Initials: MW            **FORM 3005**    1/01

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be

SCA05   Rev 11/09/00          Page 5 of 18         Initials:_____   **FORM 3005**   1/01

required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage In accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination

or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In

either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or

(c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exhange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by

this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provision of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly

requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer or servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.

The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environment Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or**

SCA15    Rev 10/13/00              Page 15 of 18              Initials: _MM_              FORM 3005    1/01

before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
MICHAEL W. WRIGHT                              Borrower

_____

_____ (Seal)
ROBERTA SOHAL                                   Borrower

State of California,                                                    ss:

County of *Alameda*

On *12-17-07* before me, *Suzanne Paris, notary public*

personally appeared

**MICHAEL W. WRIGHT AND ROBERTA SOHAL, HUSBAND AND WIFE**


**Non-Borrower: ROBERTA SOHAL**

, ~~personally known to me~~

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*Suzanne Paris*
——————————————————————(Seal)

SUZANNE PARIS
COMM. # 1478510
NOTARY PUBLIC-CALIFORNIA
ALAMEDA COUNTY
COMM. EXP. MARCH 23, 2008

Suzanne Paris
#1478510
Alameda County
Exp. March 23, 2008

SCA18    Rev 10/17/00              Page 18 of 18        Initials: *MW*    **FORM 3005**    1/01

Escrow No.: 07-**58906270**-SP
Locate-No.: CACTI7701-7701-5589-0058906270
Title No.: 07-**58906270**-JK
.

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF DUBLIN, COUNTY OF ALAMEDA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

Lot  4, Block  7, Tract 2485, filed May 3, 1963, Map Book 46, pages 37 to 40, Alameda County Records

Excepting therefrom one- half of all oil, gas other hydrocarbon substances in and under or that may be produced from a depth below 500 feet of the surface of said land without right of entry upon the surface of said land for the purposes of mining, drilling exploring or extracting such oil, gas, and other hydrocarbon substances or other use or rights in or to any portion of the surface of said land  to a depth of 500 feet below the surface thereof, as shone on the Deed to Pleasanton Ridge, Inc., recorded April 26, 1963, in Reel 866, Image 400.

APN: 941-0186-071

# 1-4 FAMILY RIDER

## (Assignment of Rents)

0174039214

THIS 1-4 FAMILY RIDER is made this ..11th.day.of.DECEMBER..2007................, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to ..WELLS.FARGO.BANK,.N.A...............................................................................................................

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: ........8552.BRIARWOOD.LANE ................................................................................................................
........................DUBLIN,.CA..94568 ................................................................................................................
*(Property Address)*

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items are now or hereafter attached to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF THE PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

MULTISTATE 1-4 FAMILY RIDER
FNMA/FHLMC Uniform Instrument

Form 3170 1/01   (Page 1 of 3)
EC024L Rev. 11/13/00

0174039214

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H.\* ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

MULTISTATE 1-4 FAMILY RIDER
FNMA/FNLMC Uniform Instrument

Form 3170 1/01   (Page 2 of 3)
EC024L Rev. 11/13/00

**0174039214**

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

\* Section H is deleted in its entirety if the Property is located in the State of Michigan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____(Seal)
MICHAEL W. WRIGHT                          -Borrower

_____(Seal)
ROBERTA SOHAL                               -Borrower

MULTISTATE 1-4 FAMILY RIDER
FNMA/FNLMC Uniform Instrument

Form 3170 1/01   (Page 3 of 3)
EC024L Rev. 11/13/00

# Exhibit C


**Freddie Mac**
We make home possible℠

May 18, 2010

M WRIGHT
8552 BRIARWOOD LANE
DUBLIN, CA 94568

RE: Your Mortgage Loan #: 174039214
Dear Homeowner:

At Freddie Mac, we help make homeownership a reality for 10,000 people each day. But our commitment to homeownership doesn't end with the purchase of a house. We're also committed to helping you keep your home and protecting your investment.

Freddie Mac is the owner of your mortgage, and WELLS FARGO BANK services the mortgage on our behalf. They have notified us that your mortgage payment has recently been delinquent, and our experience shows us that many foreclosures can be avoided if homeowners act quickly.

On our website, you can find information about the options that may be available to help you. Type the address below into your browser.

http://www.freddiemac.com/avoidforeclosure/

**In addition, we'd like you to know that the US Department of the Treasury and HOPE NOW Alliance are hosting a foreclosure prevention seminar in San Francisco on Wednesday, June 2. Another foreclosure prevention seminar will be held in Oakland on Thursday, June 3 and Friday, June 4. These events are FREE and are available to you.**
**If your mortgage company is already working with you to resolve your delinquency, you need not attend this event.**

**However, if you have not been able to contact your mortgage company or have additional questions or concerns about a workout, please see the enclosed flyer for more details. All three days are the same kind of event, so there is no need to attend all days. Please select the date, time and location most convenient for you and bring this letter with you to the event.**

Sincerely,

*Freddie Mac's Loan Resolution Department*

Notice to any recipient who has (a) filed bankruptcy or (b) received a discharge in bankruptcy: Please be advised that this letter constitutes neither a demand for payment of the captioned debt nor a notice of personal liability to any recipient hereof who may have received a discharge of such in accordance with the Bankruptcy Code or who may be subject to the automatic stay of section 362 of the bankruptcy code.

# Exhibit D



PITE
DUNCAN
LLP

October 13, 2010

**VIA UPS**

Steven W. Pite CA NV WA
John D. Duncan CA TX HA
Peter J. Salmon
CA ID UT WA
David E. McAllister
AZ CA NM OR UT WA

Rochelle L. Stanford
AZ CA OR WA
Josephine E. Salmon
AK AZ CA WA
Laurel J. Handley AZ CA ID NV
Daniel K. Cannel CA TX
Eddie R. Jimenez CA NV TX
Susan L. Pali AK CA WA
Douglas A. Toleno AZ CA
Cuong M. Nguyen CA NV
Caspar J. Rankin CA OR
Charles A. Correia CA
Melodie A. Walizon CA WA
Brian A. Paino AZ CA TX NV
Christopher McDermott CA
Jillian A. Benbow CA
Thomas N. Abbott CA
Brent A. Callahan CA
Natalie Y. Nguyen CA
Genail M. Anderson CA
Ellen Cha CA NV
Erin L. Lacey CA
John B. Acierno CA
William L. Partridge CA
Christopher L. Peterson CA
Jason W. Short CA
Jason L. Eliaser CA
Joseph C. Delmotte CA
Gabriel Ozel CA NV TX
Stefanie A. Thiara CA
Aune W. Hamann CA
Paul Quiqum CA
Hieu T. Pham CA
Travis A. Lillie CA
Carla M. Stalcup CA
Elana J. Moeckel CA
Bryan J. Brown CO TX
Eric J. Fraten CA
Christopher J. Donewald CA
Catherine A. Vinh CA
David M. Liu CA
Christina M. Harper AZ
Kyle J. Skelton AZ
Gregg A. Hubley NV
Ace C. Van Patten ID NV
Christina S. Ihirud NV
Beau Bennett CA NV
Allison R. Schmidt NV
Christopher A. J. Swift CA NV
David C. Welling NV
Eric A. Marsback OR WA
Tracy D. Fink TX
Claire A. Mack CA TX
Spencer Macdonald UT
Jesse Baker OR WA
Shannon L. Kingston WA
Adele Vigil Karoum NV
David J. Boulanger OR
Carrie Thompson Jones AZ
Chad L. Butler CA
Alexis M. Bornholt CA NV
Rachel A. DaPena AZ CA
Gilbert R. Yabes CA
Allison C. Llenau AZ CA

Michael W. Wright
8552 Briarwood Lane
Dublin, CA 94568

Re:     Wright Repayment Plan
        Loan No.: 0174039214
        Our File No.:  000014-122016779

Dear Mr. Wright:

This office represents Wells Fargo Home Mortgage, Inc, which has requested that we prepare and forward to you the enclosed Repayment Plan relating to your loan.

Accordingly, please date, sign and return the original of the agreement to this office on or before November 5, 2010. Please note that your initial payment of $9,176.83 **(in certified funds)** must also be sent to this office on or before November 5, 2010.

Unless you dispute the validity of the debt, or any portion of the debt, within thirty (30) days of the date of this notice we will assume the debt is valid. If you notify us in writing within this thirty-day period that the debt, or any portion of the debt, is in dispute, we will obtain verification of the debt and will mail you a copy of the verification via regular first-class mail. Also, upon your written request, within 30 days of this notice, we will provide you with the name and address of your original creditor on this loan, if it is different from the current creditor. **Please note that this notice does not affect the Trustee's sale currently set for November 12, 2010.**

Sincerely,

Melody Simmons

Enclosures

cc:     Wells Fargo Home Mortgage, Inc

*Mailing - Bankruptcy*
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
*Mailing - Unlawful Detainer*
4375 Jutland Drive, Suite 200
P.O. Box 17934
San Diego, CA 92177-0934
*Overnight*
4375 Jutland Drive, Suite 200
San Diego, CA 92117
Ph.: (858) 750-7600
Fax: (619) 590-1385

This is an attempt to collect a debt by a debt collector, and any information obtained will be used for that purpose. If you have received a discharge in bankruptcy, we do not seek a money judgment against you, but we seek only possession of the collateral which is security for the debt.

Attorneys licensed to practice in Alaska, Arizona, California, Hawaii
Idaho, Nevada, New York, Oregon, Texas, Utah and Washington
*See above or visit www.piteduncan.com re individual attorney admissions.*

### REPAYMENT PLAN
### BY AND BETWEEN WELLS FARGO HOME MORTGAGE, INC
### AND
### MICHAEL W. WRIGHT

| | |
|---|---|
| Property: | 8552 Briarwood Lane, Dublin, CA 94568 |
| Loan No.: | 0174039214 |

This Repayment Plan (hereinafter "Plan"), made October 13, 2010, by and between WELLS FARGO HOME MORTGAGE, INC (hereinafter referred to as "Lender"), located at 1000 Blue Gentian Rd, Suite 300, MAC Code 9999-01N, Eagan MN 55121, and MICHAEL W. WRIGHT, (hereinafter referred to as "Borrower").

WITNESS THAT whereas, Lender is the servicing agent and/or the owner and holder of a certain Note dated December 11, 2007, executed and delivered by Borrower in the original principal amount of $417,000.00 (hereinafter the "Note"). The Note is secured by a Deed of Trust dated December 11, 2007, (hereinafter the "Deed of Trust"), therewith on the property located at 8552 Briarwood Lane, Dublin, CA 94568 (hereinafter referred to as "the Property"). Said Deed of Trust was recorded with the County Recorder's Office in Alameda County, State of California, on January 3, 2008, as Document Recording No. 2008001730. Herewith the Note and Deed of Trust are collectively known as the "Loan Documents."

WHEREAS, Borrower is in default under the Loan Documents, has failed to make payment of monthly installments of principal and interest called for under the Loan Documents for the period commencing March 1, 2010, through and including November 5, 2010, and has incurred additional expenses called for under the Loan Documents, resulting in total arrears of $26,219.50, as set forth below:

| | | |
|---|---|---|
| 1. | Unpaid monthly payments (9 months @ $2,533.74) | $22,803.66 |
| 2. | Late Charges as of 11/05/10 | $1,013.52 |
| 3. | Corporate Advances & Other Fees | $105.00 |
| 4. | Foreclosure fees and costs | $2,147.32 |
| 5. | Repayment Plan Attorney Fee | $150.00 |
| | **Total arrears as of 11/05/10 (hereinafter referred to as the "Arrears").** | **$26,219.50** |

WHEREAS, as a result of the Arrears, Lender has the right to accelerate the sums owed under the Note and secured by the Deed of Trust and has already commenced foreclosure proceedings to sell the Property.

WHEREAS, Lender is not obligated to enter into this Plan, but is doing so in an attempt to assist Borrower in avoiding foreclosure of the Property. However, Lender shall require Borrower's strict compliance with the terms herein. Further, any breach hereunder shall result in Lender proceeding with the foreclosure without additional notice, except for that required by law (if any).

WHEREAS, Borrower has requested Lender's forbearance in exercising its rights and remedies under the default provisions of the Loan Documents and with regard to the foreclosure action, as well as requested certain debt relief.

WHEREAS, Lender is willing to honor Borrower's request by granting forbearance on the terms set forth herein.

NOW, THEREFORE, in consideration of the promises and mutual covenants herein contained, the parties hereto agree as follows:

1.     Lender's Forbearance. Lender shall forbear from exercising any or all of its rights and remedies presently existing or arising during the term of this Plan under the Loan Documents, provided there is no default as such term is defined herein at paragraph 4.

2.     Borrower's Admissions and Waivers. Borrower admits the amount specified in this Plan as due and owing the Lender under the Loan Documents is correct, and represents and acknowledges that there are no defenses, offsets or counter claims of any nature whatsoever to any of the Loan Documents. **In consideration of Lender's forbearance, Borrower hereby expressly waives their right to challenge or contest the foreclosure process initiated by Lender, including all acts or omissions prior to or subsequent to this Plan, whether such acts or omissions were performed by Lender, the Trustee, or any party acting on behalf of the Lender or Trustee.**

**Borrower admits and recognizes that any and all postponements of a Trustee's Sale under this Plan is done by mutual consent of the Borrower and Lender under California Civil Code § 2924g (c)(1)(C) and that the sale may be postponed from time to time until the loan is fully reinstated or the foreclosure sale is consummated.**

3.     Borrower's Payment of Arrears. Borrower shall cure the Arrears owed Lender in the following manner:

**a.     By paying to Lender the sum of $9,176.83, in certified funds, on or before November 5, 2010. Said sum is to be made payable to Pite Duncan LLP Trust Account, and mailed to:**

-2-

**Pite Duncan LLP**
**4375 Jutland Drive, Suite 200**
**San Diego, CA 92117**
**Attention: Douglas A. Toleno**

b.      By paying Lender the remaining sums due in Twelve (12) monthly installments of $3,953.96. Said monthly payments are to be paid on or before the 1ˢᵗ day of each month commencing December 1, 2010, and continuing through and including November 1, 2011. Said monthly payments include the <u>regularly scheduled payment of $2,533.74 and the arrearage payment of $1,420.22</u> for a total monthly payment of $3,953.96. Said monthly payments are to be paid to Wells Fargo Home Mortgage, Inc at the address set forth in paragraph 9 below.

c.      All payments are to be in certified funds.

d.      **The 15-day grace period under the Loan Documents will not apply to payments under the Plan. Therefore, the Lender must receive the payment on the 1ˢᵗ day of each month.**

4.      <u>Default</u>. If Borrower fails to make any of the payments specified herein on the due date thereof in the amount stated above, all amounts then remaining unpaid under the Loan Documents and this Plan shall be immediately due and payable, subject to the right of reinstatement required under the Loan Documents and applicable state law. Borrower understands and agrees that upon default hereunder, **without further notice,** except that required by state law (if any), Lender shall be free to immediately exercise any or all of the rights and remedies it may have, including proceeding with its foreclosure sale of the Property.

5.      <u>No Waiver</u>.     This Plan shall not be construed as a discontinuance of the foreclosure action by the Lender. By entering into this Plan, Lender shall in no way be considered to have waived or have been estopped from exercising any or all of its rights or remedies under the Loan Documents. Nothing contained herein shall constitute a waiver of any or all of the Lender's rights or remedies existing at the time of executing this Plan, including the right to commence, or continue with, a foreclosure action. An acceptance of any monies by Lender shall not be deemed an estoppel, prejudice or waiver of Lender's rights to proceed, or continue with foreclosure.

6.      <u>Taxes and Insurance</u>. All property taxes must be paid and kept current during the pendency of this Plan. Further, homeowner's insurance must be in place before and during the pendency of this Plan.

7.      <u>Status of the Foreclosure</u>. The foreclosure has the present status: A Notice of Default and Election to Sell Under Deed of Trust was recorded on June 21, 2010, in the County Recorder's Office, County of Alameda, State of California, as Document No. 10-172803 (hereinafter "Notice of Default"). There is currently a sale set for November 12, 2010. The Notice of Trustee's Sale was recorded on September 22, 2010, in the County Recorder's Office, County of Alameda, State of California, as Document No. 10-274815 (hereinafter "Notice of Sale"). The Notice of

-3-

Default and Notice of Sale shall remain in full force and effect until such time as the Borrower becomes completely current pursuant to this Repayment Plan and the Loan Documents.

**As noted in paragraph 2 above, Lender may continue to postpone the foreclosure sale set from time to time until all outstanding amounts due under the Loan Documents have been fully cured.**

8. <u>Limited Modification</u>. Except as modified herein, the Loan Documents are ratified and confirmed and shall remain in full force and effect. This Plan may not be amended orally but only by an executed instrument in writing.

9. **<u>Method of Making Payments and Arrears Payment</u>. All payments by the Borrower as described herein shall be made by certified funds. Except for the initial payment described in section 3.a. above, all payments shall be payable to the order of Wells Fargo Home Mortgage, Inc, and mailed to 1000 Blue Gentian Rd, Suite 300, MAC Code 9999-01N, Eagan MN 55121.**

10. <u>Bankruptcy Discharge</u>. If you have received a Chapter 7 discharge please note that Lender recognizes that your discharge relieves you of all personal liability on the loan and Lender may not attempt to collect this debt from you personally. This Plan in no way revives your personal liability on the subject obligation. Lender does, however, retain the right, despite the discharge, to enforce its security against the Property by foreclosing if a default exists.

11. **In addition to the payment obligations as specified in paragraph 3 of this Plan, Borrowers shall return the fully executed Plan to Pite Duncan LLP, 4375 Jutland Drive, Suite 200, San Diego, CA 92117: Attention: Douglas A. Toleno, on or before November 5, 2010.**

12. This Plan sets forth all of the promises, covenants, agreements, conditions and understandings between the parties hereto with respect to the subject matter hereof. This Plan supersedes all prior understanding, inducements or conditions, express or implied or written with respect thereto except as contained or referred to herein.

13. This Plan shall be non-transferable by the Borrower. Wells Fargo Home Mortgage, Inc may assign its rights and remedies under this Plan to a successor in interest.

14. The installment payments due under this Plan may be adjusted from time to time to account for variations in the regular monthly payments due under the terms of the Loan Documents and adjustments in amounts due for property taxes and/or insurance for escrowed accounts. In the event the Borrower cures the Arrears by making all payments required under this Plan, taking into account any adjustments to the Plan payments that may occur, and are current with payments then due, and no event of default exists under the Loan Documents or this Plan, Lender shall reinstate the Note and Deed of Trust according to its original terms and conditions.

-4-

IN WITNESS HEREOF, the parties hereto have caused this Plan to be duly executed as of the date signed.

Dated:_____      _____ __ _____

MICHAEL W. WRIGHT

Approved by:_____

WELLS FARGO HOME MORTGAGE, INC

7897577.wpd

-5-

# Exhibit E



Wells Fargo Home Mortgage
MAC X7801-03K
3476 Stateview Boulevard
Fort Mill, SC 29715

October 20, 2010


Michael W Wright
2733  Corte Vera Cruz
Pleasanton CA 94566


Dear Michael W Wright :

RE:  Loan Number 0174039214                      Client 708

At Wells Fargo, our goal is simple. We want to ensure that you have every
opportunity to retain your home. Based on our telephone conversation and
the financial information you provided, we are considering a program that
may assist you in curing the delinquency on your loan. This program,
known as a loan modification, will reschedule your loan balance to set up
a new payment and provide you with the opportunity for a fresh start.
Please be advised this letter is not a guarantee or approval of the loan
modification. To continue the review, you must return the following:

- An initial payment of $$5000.00, that is due on 2010-10-24.
  This payment will be applied to any fees or costs associated with this
  modification, and may only cover these fees and costs. Any remaining
  balance from the initial payment will be applied to outstanding
  delinquent payments. If the amount mentioned is collected during
  your conversation with the Wells Fargo representative please disregard
  the due date listed above. If you are not approved for a loan
  workout, the initial payment will be returned to you.

- The enclosed financial statement. It is important that this information
  is accurate and complete. Any information that is left blank or is not
  completely correct, may delay the processing of this modification.

- Most recent paycheck stub(s). This is required for each person who is
  listed on the mortgage or deed or trust for this loan. If you receive
  additional income from any other sources that you would like us to
  consider, proof of that income must also be included. If you are
  self-employed, please submit your most recent tax return(s) and a copy
  of your most recent Profit and Loss statement for consideration.

Additional information may be requested throughout the review process
depending upon the type of loan.

                                        LM116/J68/1


                                        Together we'll go far

Page 2
Loan Number 708/0174039214

Once Wells Fargo receives the items listed above, we will complete an
analysis of your situation and seek the appropriate approvals. Based on
your financial ability, the terms of your loan modification may change.
We may add any remaining past due interest or escrow payments (taxes and
insurance) to your outstanding loan balance and/or may extend the term of
your loan. If the modification is approved, you will receive additional
information that explains the terms of the agreement including the amount
of any cash contribution that may be required.

Please note that until you are approved for a modification, normal
default servicing will continue which includes any foreclosure action
that may be in process. Foreclosure action will not be placed on hold
until you have returned the signed agreement and the required initial
payment. You are responsible to pay any fees associated with this action
that continue to accrue until your loan modification is approved.

You must send the documents and the amount requested above to be received
in office no later than the date requested. Once again, if the amount
mentioned was collected during your conversation with the Wells Fargo
representative please disregard. Please fax or mail to:

> Wells Fargo Home Mortgage
> Attn: Borrower Counseling
> 3480 Stateview Blvd., MAC X7802-03H
> Fort Mill SC 29715

> Fax: (866) 359-7363

If during the review process, additional information is needed, we will
be contacting you to discuss. In the meantime, if we can be of further
assistance, please call us at (800) 416-1472, Monday through Thursday,
7 AM to 8 PM; Friday, 7 AM to 7 PM and Saturday, 8 AM to 12 PM, Central
Time.

Sincerely,

Borrower Counseling Services


Enclosure

Wells Fargo Bank, N A is required by the Fair Debt Collection
Practices Act to inform you that if your loan is currently delinquent
or in default, as your loan servicer, we will be attempting to collect
a debt, and any information obtained will be used for that purpose.
However, if you have received a discharge, and the loan was not
reaffirmed in the bankruptcy case, Wells Fargo Bank, N A will
only exercise its right as against the property and is not attempting
any act to collect the discharge debt from you personally.
LM116/J68/2

# FINANCIAL WORKSHEET

WELLS FARGO | HOME MORTGAGE

| WELLS FARGO BANK, N.A. LOAN NUMBER: |
|---|

| Primary Insurance Certificate No: | MIC/LGIC No: |
|---|---|
| Borrower's Name | Social Security Number |
| Borrower's Name | Social Security Number |
| Home Telephone Number ( ) | Work Telephone Number(s) ( ) ( ) |

If necessary, who should we call to set up an appointment to appraise the property:

### PROPERTY ADDRESS
Street Address, City, State, Zip Code

**MAILING ADDRESS** (if different than property address) ☐ Rent ☐ Own  How Long
Street Address, City, State, Zip Code

### I. MONTHLY INCOME DATA

| DESCRIPTION | INCOME BORROWER | INCOME CO-BORROWER | TOTAL |
|---|---|---|---|
| NET SALARY/WAGES | | | |
| COMMISSION/BONUSES | | | |
| OTHER (IDENTIFY) | | | |
| TOTAL NET INCOME | | | |

### II. ASSETS     III. LIABILITIES

| DESCRIPTION | ESTIMATED VALUE | DESCRIPTION | MONTHLY PAYMENT | BALANCE DUE |
|---|---|---|---|---|
| HOME | | MORTGAGE | | |
| OTHER REAL ESTATE (explain) | | OTHER MORTGAGE/RENT | | |
| AUTOMOBILE | | ALIMONY/CHILD CARE | | |
| AUTOMOBILE | | AUTOMOBILE | | |
| CHECKING ACCOUNTS | | AUTOMOBILE | | |
| SAVINGS/MONEY MKT. | | UTILITIES (total) | | |
| IRA/KEOGH ACCOUNTS | | INSURANCE | | |
| 401K/ESOP ACCOUNTS | | STUDENT LOAN | | |
| STOCKS/BONDS, CD'S | | CREDIT CARDS (total) | | |
| OTHER INVESTMENT (explain) | | OTHER EXPENSES (identify) | | |
| | | TOTAL | | |

Please briefly explain your hardship or reason for being delinquent:

I (we) certify that the financial information stated above is true, and is an accurate statement of my/our financial condition. I/We understand and acknowledge that any action taken by the lender of my/our mortgage loan on my/our behalf will be made in strict reliance on the financial information provided. My/Our signature(s) below grants the holder of my/our mortgage the authority to obtain a credit report to verify the information in this financial to be accurate.

**NOTICE:** ATI Title Co. is a subsidiary of Wells Fargo Bank, N.A. A lender is allowed to require the use of an Attorney, Escrow Agent, Credit Reporting Agency or Real Estate Appraiser chosen to represent the lender's interest.

By _____  Date ____ / ____ / ____  By _____  Date ____ / ____ / ____

## FINAL INSTRUCTIONS
- Make sure you have signed and dated the form
- Include copy of your last year's Federal Tax Return with all attachments
- Include copy of your most recent paystubs or proof of income if self-employed

# Exhibit F

**Recording Requested By**

**When Recorded Mail To**

Cal-Western Reconveyance Corp.
P.O. Box 22004
525 East Main Street
El Cajon CA 92022-9004

*1285913-10*  *NODXR*
Trustee Sale No. 1285913-10
APN: 941-0186-071-00

2010172803     06/21/2010 02:57 PM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:     24.00

3   PGS

*Space Above This Line For Recorder's Use*

Loan No. XXXXXX9214 Ref: WRIGHT, MICHAEL
Property Address: 8552 BRIARWOOD LANE, DUBLIN CA 94568

# NOTICE OF DEFAULT

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice). This amount is $10,421.72 as of June 19, 2010, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

WELLS FARGO BANK, NA

C/O CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON        9004 CA 92022-9004
(619)590-9200

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

*See Attached Declaration*

NODCA                                    rev 04/15/10                                    Page 1 of 2

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

---

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### NOTICE IS HEREBY GIVEN:

CAL-WESTERN RECONVEYANCE CORPORATION is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a deed of trust dated December 11, 2007 executed by

MICHAEL W WRIGHT AND ROBERTA SOHAL, HUSBAND AND WIFE as trustor, to secure certain obligations in favor of WELL FARGO BANK, N.A. as beneficiary, recorded as document 2008001730 on January 03, 2008 in book XX page XX official records in the office of County Recorder of ALAMEDA County, California, describing land therein as:

COMPLETELY DESCRIBED IN SAID DEED OF TRUST,

said obligations including a promissory note for the principal sum of $417,000.00.
That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Failure to pay the monthly payment due March 1, 2010 of principal and interest and subsequent installments due thereafter; plus late charges; together with all subsequent sums advanced by beneficiary pursuant to the terms and conditions of said deed of trust.

That by reason thereof the present beneficiary under such Deed of Trust has deposited with said trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

See attached SB1137 Declaration.

T.S. 1285913-10
Dated:      June 19, 2010                    **CAL-WESTERN RECONVEYANCE CORPORATION**

Signature By _____

D. Guajardo

LSI TITLE COMPANY, AS AGENT

## NOTICE OF DEFAULT DECLARATION
PURSUANT TO CALIFORNIA CIVIL CODE 2923.5

Wells Fargo Home Mortgage
3476 Stateview Blvd,
Fort Mill, SC 29715

Borrower: MICHAEL W WRIGHT
Property Address: 8552 BRIARWOOD LANE
DUBLIN        CA   94568

The undersigned mortgagee, beneficiary, or their authorized agent (collectively, the "Beneficiary") represent and declares that the requirements of CA Civil Code 2923.5 have been met. This Declaration is required for any residential owner occupied property in which the loan was originated between January 1, 2003 and December 31, 2007. Non-owner occupied property and vacant property are exempt from the requirements of CA Civil Code 2923.5.

One of the below necessary requirements was met by the Beneficiary:

* The Beneficiary has made contact with the borrower pursuant to CA Civil Code 2923(a)(2). Contact with the borrower was made in person or by telephone to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure

* Due Diligence to contact the borrower was exercised pursuant to CA Civil Code 2923.5(g)(2) by the Beneficiary

* The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, Trustee, beneficiary, or authorized agent pursuant to CA Civil Code 2923.5(h)(1).

* The borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries pursuant to CA Civil Code 2923.5(h)(2).

* The borrower has filed for bankruptcy and the proceedings have not been finalized pursuant to CA Civil Code 2923.5(h)(3).

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated:   06/14/2010

Wells Fargo Home Mortgage
John Moriarty
VP of Loan Documentation

# Exhibit G

RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO:

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON CA 92022-9004



 

2010244156    08/24/2010 10:35 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:    24.00

3  PGS

SPACE ABOVE THIS LINE FOR RECORDER'S USE_____

LOAN NO.: XXXXXX9214   T.S. NO.: 1285913-10

1003165330

## SUBSTITUTION OF TRUSTEE
This Form Provided By Cal-Western Reconveyance Corporation

WHEREAS, MICHAEL W WRIGHT AND ROBERTA SOHAL, HUSBAND AND WIFE
was the original Trustor,

FIDELITY NATIONAL TITLE INSURANCE COMPANY
was the original Trustee,

and WELL FARGO BANK, N.A.        was the original Beneficiary

under that certain Deed of Trust dated December 11, 2007 and recorded on January 03, 2008 as
Instrument No. 2008001730, in book XX, page XX of Official Records of ALAMEDA County,
California, and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and WHEREAS,
the undersigned desires to substitute a new Trustee under said Deed of Trust in the place and stead of
present Trustee thereunder, in the manner in said Deed of Trust provided.

NOW, THEREFORE, the undersigned hereby substitutes

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET, P.O. BOX 22004
EL CAJON CA 92022-9004

as Trustee under said Deed of Trust.

*See Attached Affidavit*

## SUBSTITUTION OF TRUSTEE

**LOAN NO:**   9214

**TS NO:**   1285913-10

**Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.**

**Dated:**   6-11-2010

**Wells Fargo Bank N.A.**

**By Cal-Western Reconveyance Corporation as Attorney-In-Fact**

Lorrie Womack
Assistant Vice President

**State of California**
**County of San Diego**

S. ARCHULETA

**On**  AUG 1 6 2010  **before me,**  J. Archuleta  **a Notary Public, personally appeared Lorrie Womack, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

**WITNESS my hand and official seal.**

**Signature**                                         **(Seal)**

J. ARCHULETA
Commission # 1698601
Notary Public - California
San Diego County
My Comm. Expires Oct 22, 2010

ca/ut/or sub. AIF.doc                    Rev. 1/21/09                    Page 2 of 2



# CAL-WESTERN RECONVEYANCE CORPORATION

**T.S NO.** 1285913-10

**LOAN NO.** 9214

## AFFIDAVIT OF MAILING SUBSTITUTION OF TRUSTEE
### PURSUANT TO CALIFORNIA CIVIL CODE §2934a

STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

THE UNDERSIGNED BEING SWORN, SAY(S):

A COPY OF THE SUBSTITUTION OF TRUSTEE HAS BEEN MAILED, PRIOR TO OR CONCURRENTLY WITH THE RECORDING THEREOF, IN THE MANNER PROVIDED IN SECTION 2934a OF THE CIVIL CODE OF CALIFORNIA, TO ALL PERSONS TO WHOM A COPY OF THE NOTICE OF DEFAULT WOULD BE REQUIRED TO BE MAILED BY THE PROVISIONS OF SUCH SECTION.

Dated: **08/19/2010**

_____
**Christine L. Stinson**

State of California
County of San Diego

**AUG 1 9 2010**

On _____ before me, _Goya A. Fowler_, a Notary Public, personally appeared Christine L. Stinson, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.                    (Seal)

Signature _____

> **GOYA A. FOWLER**
> **COMM. # 1734191**
> NOTARY PUBLIC - CALIFORNIA
> SAN DIEGO COUNTY
> My Comm. Expires March 25, 2011

Goya A. Fowler
# 1734191
Exp, March 25, 2011 (Rev. 10/02/09)

ASUB DOC

Cal-Western Reconveyance Corporation
525 East Main Street, El Cajon, California 92020 •P.O. Box 22004, El Cajon, California 92022-9004
TEL.: (619) 590-9200 •FAX: (619) 590-9299 • Website: www.cwrc.com

# Exhibit H

*v22*

**{UVBU5330**

RECORDING REQUESTED BY
And When Recorded Mail To:

```
2010274815        09/22/2010 10:53 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:            24.00

                                  3    PGS
```

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON CA 92022-9004

*p25A*

*3*

APN: **941-186-71**                          *cd*

Trustee Sale No. **1285913-10**                Space Above This Line For Recorder's Use

# NOTICE OF TRUSTEE'S SALE

LOAN NO: **XXXXXX9214**                    TRA:**26-001**
REF: **WRIGHT, MICHAEL**                   **UNINS**
Property Address: 8552 BRIARWOOD LANE, DUBLIN CA 94568

## IMPORTANT NOTICE TO PROPERTY OWNER:

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED **December 11, 2007**. UNLESS YOU
TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF
YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU
SHOULD CONTACT A LAWYER

On **October 12, 2010**, at **12:30pm**, **CAL-WESTERN RECONVEYANCE CORPORATION**, as duly
appointed trustee under and pursuant to Deed of Trust recorded **January 03, 2008**, as Inst. No.
**2008001730**, in book **XX**, page **XX**, of Official Records in the office of the County Recorder of
**ALAMEDA** County, State of **CALIFORNIA** executed by:

### MICHAEL W WRIGHT AND ROBERTA SOHAL, HUSBAND AND WIFE

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK
DRAWN ON A STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL
CREDIT UNION, OR A CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN
ASSOCIATION, SAVINGS ASSOCIATION, OR SAVINGS BANK SPECIFIED IN SECTION 5102
OF THE FINANCIAL CODE AND AUTHORIZED TO DO BUSINESS IN THIS STATE:

### AT THE FALLON STREET ENTRANCE TO THE COUNTY COURTHOUSE
### 1225 FALLON STREET
### OAKLAND CALIFORNIA

all right, title and interest conveyed to and now held by it under said Deed of Trust in the property
situated in said County and State described as:

### COMPLETELY DESCRIBED IN SAID DEED OF TRUST

See Attached Declaration

NOS.DOC                        Rev 05/11/10                        Page 1 of 2

## NOTICE OF TRUSTEE'S SALE

Trustee Sales No. 1285913-10

The street address and other common designation, if any, of the real property described above is purported to be:
**8552 BRIARWOOD LANE**
**DUBLIN CA 94568**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be held, but without covenant or warranty, express or implied, regarding title, possession, condition, or encumbrances, including fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to pay the remaining principal sums of the note(s) secured by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is: **$424,879.60**.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**Regarding the property that is the subject of this notice of sale, the "mortgage loan servicer" as defined in Civil Code § 2923.53(k)(3), declares that it has obtained from the Commissioner a final or temporary order of exemption pursuant to Civil Code section 2923.53 and that the exemption is current and valid on the date this notice of sale is recorded. The time frame for giving a notice of sale specified in Civil Code Section 2923.52 subdivision (a) does not apply to this notice of sale pursuant to Civil Code Sections 2923.52. See Attached Declaration.**

FOR SALES INFORMATION: Mon – Fri 9:00am to 4:00pm (714)730-2727
**CAL-WESTERN RECONVEYANCE CORPORATION**
**525 EAST MAIN STREET**
**P.O. BOX 22004**
**EL CAJON CA 92022-9004**

Dated: **September 22, 2010**

CAL-WESTERN RECONVEYANCE CORPORATION

By: _____
Authorized Signature

THELMA B. CABACUNGAN

CALIFORNIA DECLARATION

I, _____John Kennertv_____, of America's Servicing Company
("Mortgage Loan Servicer"), declare under penalty of perjury, under the laws of the State
of California, that the following is true and correct:

The Mortgage Loan Servicer _X_ has or __:__ has not obtained from the Commissioner
of Corporation a final or temporary order of exemption pursuant to California Civil code
Section 2923.53 that is current and valid on the date the accompanying Notice of Sale is
filed.

AND/OR

The timeframe for giving Notice of Sale specified in subdivision (a) of Civil Code
Section 2923.52 ___ does or _X_ does not apply pursuant to Section 2923.52 or
2923.55.


_07/03/2009_   _Fort Mill, South Carolina_
DATE AND PLACE


_____
Name of Signor                          Title and/or Position

        John Kennertv
_____

# Exhibit I

14



APN: 941-186-71

Recording Requested By
And When Recorded Mail To:

WELLS FARGO BANK, N.A.
3476 STATEVIEW BLVD
FORT MILL SC 29715

2011030627    01/25/2011 10:28 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:    21.00



2    PGS



 

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. NO.    1285913-10
LOAN NO.    XXXXXX9214

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
FEDERAL HOME LOAN MORTGAGE CORPORATION

all beneficial interest under that certain deed of trust dated December 11, 2007, executed by
MICHAEL W WRIGHT AND ROBERTA SOHAL, HUSBAND AND WIFE, trustor,
to FIDELITY NATIONAL TITLE INSURANCE COMPANY, trustee,
and recorded as Instrument No. 2008001730 on January 03, 2008 in book XX page XX, of Official Records in
the County Recorder's office of ALAMEDA County, CALIFORNIA describing land therein as

LOT 4, BLOCK 7, TRACT 2485, FILED MAY 3, 1963, MAP BOOK 46, PAGES 37 TO 40, ALAMEDA
COUNTY RECORD. MORE COMPLETELY DESCRIBED IN ATTACHED EXHIBIT A.

together with the note or notes therein described or referred to, the money due and to become due thereon with
interest, and all rights accrued or to accrue under said Deed of Trust.

Dated:    1/13/11

WELLS FARGO BANK, NA
By Cal-Western Reconveyance Corporation, as Attorney-In-Fact

*COUNTY of SAN DIEGO
SAN 20, 2011

Wendy V. Perry, AVP

State of California)
County of San Diego)
On JAN 2 0 2011 before me, _____,
a Notary Public, personally appeared

Rosalyn Hall

_____ Wendy V. Perry, AVP _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of
the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal    (Seal)

Signature _____

ROSALYN HALL
COMM. #1793727
Notary Public · California
San Diego County
My Comm. Expires Mar. 16, 2012

ASGNTD.doc                                                                Page 1 of 1

## EXHIBIT A

LOT 4, BLOCK 7, TRACT 2485, FILED MAY 3, 1963, MAP BOOK 46, PAGES 37 TO 40, ALAMEDA COUNTY RECORDS

EXCEPTING THEREFROM ONE-HALF OF ALL OIL, GAS OTHER HYDROCARBON SUBSTANCES IN AND UNDER OR THAT MAY BE PRODUCED FROM A DEPTH BELOW 500 FEET OF THE SURFACE OF SAID LAND WITHOUT RIGHT OF ENTRY UPON THE SURFACE OF SAID LAND FOR THE PURPOSES OF MINING, DRILLING EXPLORING OR EXTRACTING SUCH OIL, GAS, AND OTHER HYDROCARBON SUBSTANCES OR OTHER USE OR RIGHTS IN OR TO ANY PORTION OF THE SURFACE OF SAID LAND TO A DEPTH OF 500 FEET BELOW THE SURFACE THEREOF, AS SHONE ON THE DEED TO PLEASANTON RIDGE, INC., RECORDED APRIL 26, 1963, IN REEL 866, IMAGE 400.

# Exhibit J

15

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO

WHEN RECORDED MAIL TO:

**WELLS FARGO BANK, N.A.**
**3476 STATEVIEW BLVD**
**FORT MILL SC 29715**

TRA # 26-001
Trust No. 1285913-10
Loan No. XXXXXX9214

**2011030628**    **01/25/2011 10:28 AM**
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:    21.00

3    PGS

Space Above This Line For Recorder

MAIL TAX STATEMENT TO:

Same as above

Documentary Transfer Tax $.00
_X_ Grantee was the foreclosing beneficiary.
consideration $426,370.09
unpaid debt $426,370.09
non exempt amount $
__Computed on the consideration or value of
property conveyed.
__Computed on the consideration of value less
liens or encumbrances remaining at time of sale.

Signature of Declarant or Agent    **Selwa Ishoo**
AP# 941-186-71

## TRUSTEE'S DEED UPON SALE

**CAL-WESTERN RECONVEYANCE CORPORATION** (herein called trustee)
does hereby grant and convey, but without covenant or warranty, express or implied to
**FEDERAL HOME LOAN MORTGAGE CORPORATION** (herein called Grantee) the real property in the
county of **ALAMEDA**, State of California described as follows:

**LOT 4, BLOCK 7, TRACT 2485, FILED MAY 3, 1963, MAP BOOK 46, PAGES 37 TO 40, ALAMEDA
COUNTY RECORD. MORE COMPLETELY DESCRIBED IN ATTACHED EXHIBIT A.**
The street address and other common designation, if any, of the real property described above is purported to be:
**8552 BRIARWOOD LANE**
**DUBLIN CA 94568**

This conveyance is made pursuant to the authority and powers vested in said Trustee, as Trustee, or Successor
Trustee, or Substituted Trustee, under that certain Deed of Trust executed by
**MICHAEL W WRIGHT AND ROBERTA SOHAL, HUSBAND AND WIFE** as Trustor, recorded **January
03, 2008**, as Document No. 2008001730, in Book XX, page XX, of Official Records in the Office of the
Recorder of ALAMEDA County, California; and pursuant to the Notice of Default recorded **June 21, 2010**, as
Document No. X10-172803 in Book XX, page XX of Official Records of said County, Trustee having complied
with all applicable statutory requirements of the State of California and performed all duties required by said
Deed of Trust, including, among other things, as applicable, the mailing of copies of notices or the publication of
a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of
copies of the notice of sale or the publication of a copy thereof.

✱ 2010-172803

TDUSCA.DOC    Page 1 of 2

TRA #  **26-001**
Trust No. **1285913-10**
Loan No. **XXXXXX9214**

At the place fixed in the Notice of Trustee's Sale, said Trustee did sell said property above described at public auction on **January 13, 2011** to said Grantee, being the highest bidder therefore, for **$426,370.09** cash, lawful money of the United States, in satisfaction pro tanto of the indebtedness then secured by said Deed of Trust.

**CAL-WESTERN RECONVEYANCE CORPORATION**

Dated: **January 13, 2011**

Wendy V. Perry, AVP

State of California )
County of San Diego)

On **JAN 2 0 2011** before me, _____ **Rosalyn Hall** _____,
a Notary Public, personally appeared _____ **Wendy V. Perry, AVP** _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal                    (Seal)

Signature _____

ROSALYN HALL
COMM. #1793727
Notary Public · California
San Diego County
My Comm. Expires Mar. 16, 2012

## EXHIBIT A

LOT 4, BLOCK 7, TRACT 2485, FILED MAY 3, 1963, MAP BOOK 46, PAGES 37 TO 40, ALAMEDA COUNTY RECORDS

EXCEPTING THEREFROM ONE-HALF OF ALL OIL, GAS OTHER HYDROCARBON SUBSTANCES IN AND UNDER OR THAT MAY BE PRODUCED FROM A DEPTH BELOW 500 FEET OF THE SURFACE OF SAID LAND WITHOUT RIGHT OF ENTRY UPON THE SURFACE OF SAID LAND FOR THE PURPOSES OF MINING, DRILLING EXPLORING OR EXTRACTING SUCH OIL, GAS, AND OTHER HYDROCARBON SUBSTANCES OR OTHER USE OR RIGHTS IN OR TO ANY PORTION OF THE SURFACE OF SAID LAND TO A DEPTH OF 500 FEET BELOW THE SURFACE THEREOF, AS SHONE ON THE DEED TO PLEASANTON RIDGE, INC., RECORDED APRIL 26, 1963, IN REEL 866, IMAGE 400.

# Exhibit K

1 JASON W SHORT, SBN 263667
RENEE BELCASTRO, SBN 270492
2 PITE DUNCAN, LLP
4375 Jutland Drive
3 Suite 200; P.O. Box 17934
San Diego, CA 92177-0934
4 Telephone: (858) 750-7600
Facsimile: (619) 590-1385

5

ENDORSED
FILED
ALAMEDA COUNTY

APR 0 4 2011

CLERK OF THE SUPERIOR COURT
By M. WILLIAMS
Deputy

6 Attorneys for Plaintiff Federal Home Loan Mortgage Corporation, its successors and/or assigns

7

8 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 **COUNTY OF ALAMEDA - HAYWARD HALL OF JUSTICE**

| | |
|---|---|
| 10 Federal Home Loan Mortgage Corporation, its successors and/or assigns, | CIVIL ACTION NO. VG7 1569010 |
| 11 Plaintiff(s). | COMPLAINT FOR UNLAWFUL DETAINER AND MONEY DAMAGES |
| 12 | |
| 13 vs. | AMOUNT DEMANDED DOES NOT EXCEED $10,000 |
| 14 Michael W Wright, Roberta Sohal, and DOES 1 through X, inclusive. | LIMITED CIVIL CASE |
| 15 Defendant(s). | ACTION BASED ON CODE OF CIVIL PROCEDURE SECTION 1161a |
| 16 | |

17 Plaintiff, Federal Home Loan Mortgage Corporation. its successors and/or assigns

18 ("Plaintiff"). alleges:

19 **CAUSE OF ACTION FOR UNLAWFUL DETAINER**

20 **AND MONEY DAMAGES**

21 1. Plaintiff is entitled to the possession of. and is the owner of record of a parcel of

22 real property (hereinafter "property") and the dwelling thereon located at 8552 Briarwood Lane,

23 Dublin, CA 94568. more particularly described as follows:

24 SEE LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "1" AND
INCORPORATED HEREIN AS IF SET FORTH IN FULL.
25

26 The property is located within the above-referenced Judicial District and County.

27 ///

28 ///

- 1 -

1    2)    The true names and capacities, whether individual, corporate, associate or
2 otherwise of the Defendants named herein as DOES I through X in occupancy are unknown to
3 Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will amend this
4 Complaint to show the true names and capacities of such DOE Defendants when they have been
5 ascertained.

6    3)    Defendant(s), and each of them, are currently in possession of and occupying the
7 property.

8    4)    Plaintiff purchased the property at a Trustee's Sale held on January 13, 2011.
9 Plaintiff's title has been duly perfected.

10    5)    Plaintiff has duly recorded the Trustee's Deed Upon Sale, a copy of which is
11 attached hereto as Exhibit "2" and incorporated herein as if set forth in full.

12    6)    Defendant(s) were served a 3-Day Written Notice To Vacate on February 4, 2011.
13 A copy of the written notice is attached hereto as Exhibit "3" and incorporated herein as if set
14 forth in full. Said service was made in compliance with Section 1162 Code of Civil Procedure.

15    7)    The Defendant(s) failed to comply with the requirements of the 3-Day Written
16 Notice to Vacate, which expired on February 7, 2011.

17    8)    The Defendant(s) continue in possession of the property unlawfully after
18 expiration of the Written 3-Day Notice to Vacate without permission of the Plaintiff and under
19 no right of claim.

20    9)    The reasonable value for the use and occupancy of the property is $43.17 per day.
21 Plaintiff seeks damages in that amount from February 8, 2011 and for each day thereafter, until
22 the date of Judgment herein.

23    10)    Plaintiff has performed all the necessary actions and given all the required notices
24 to bring this Unlawful Detainer action.

25 ///
26 ///
27 ///
28 ///

-2-

1    WHEREFORE, Plaintiff prays for Judgment against Defendant(s) as follows:

2        1)    For restitution and possession of the property; and

3        2)    For $43.17 which represents the unpaid fair rental value per day for use and

4    occupancy of the property and premises from February 8, 2011 until rendition of Judgment

5    herein;

6        3)    For such other and further relief as the Court may deem just and proper.

7

8    Dated:    March 29, 2011                PITE DUNCAN, LLP

9

10                                            JASON W SHORT, SBN 263667
                                              RENEE BELCASTRO, SBN 270492
11                                            Attorneys for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

1

**<u>VERIFICATION</u>**

2  State of California    )
                         )
3  County of San Diego )

4

5          I, RENEE BELCASTRO, am the attorney for Federal Home Loan Mortgage Corporation,

6  its successors and/or assigns, the Plaintiff in this action. Such party is absent from the County

7  where I maintain my office, and I make this verification for and on behalf of that party for that

8  reason. I have read the foregoing Summons and Complaint for Unlawful Detainer and Money

9  Damages and accompanying documents therein and know their contents. I am informed and

10  believe and on that ground allege that matters stated therein are true.

11         I declare under penalty of perjury under the laws of the State of California that the

12  foregoing is true and correct.

13         Executed March 29, 2011, at San Diego, California.

14                                                  PITE DUNCAN, LLP

15

16                                         By:
17                                                  RENEE BELCASTRO
                                                    Attorney at Law
18

19

20

21

22

23

24

25

26

27

28

-4-

**EXHIBIT A**

LOT 4, BLOCK 7, TRACT 2485, FILED MAY 3, 1963, MAP BOOK 46, PAGES 37 TO 40, ALAMEDA COUNTY RECORDS

EXCEPTING THEREFROM ONE-HALF OF ALL OIL, GAS OTHER HYDROCARBON SUBSTANCES IN AND UNDER OR THAT MAY BE PRODUCED FROM A DEPTH BELOW 500 FEET OF THE SURFACE OF SAID LAND WITHOUT RIGHT OF ENTRY UPON THE SURFACE OF SAID LAND FOR THE PURPOSES OF MINING, DRILLING EXPLORING OR EXTRACTING SUCH OIL, GAS, AND OTHER HYDROCARBON SUBSTANCES OR OTHER USE OR RIGHTS IN OR TO ANY PORTION OF THE SURFACE OF SAID LAND TO A DEPTH OF 500 FEET BELOW THE SURFACE THEREOF, AS SHONE ON THE DEED TO PLEASANTON RIDGE, INC., RECORDED APRIL 26, 1963, IN REEL 866, IMAGE 400.

EXHIBIT 1

WHEN RECORDED MAIL TO:

WELLS FARGO BANK, N.A.
3476 STATEVIEW BLVD
FORT MILL SC 29715

TRA # 26-001
Trust No. 1285913-10
Loan No. XXXXXX9214

MAIL TAX STATEMENT TO:

Same as above

THIS IS TO CERTIFY THAT THIS IS A FULL,
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORDED IN THE OFFICE OF THE COUNTY

RECORDING FEE: **$21.00**

RECORDED ON: **January 25, 2011**

AS DOCUMENT NO: **11-30628**

BY **s/ Marco Marquez**
LSI TITLE COMPANY (CA)

Space Above This Line For Recorder

Documentary Transfer Tax $.00
_X_ Grantee was the foreclosing beneficiary.
consideration $426,370.09
unpaid debt $426,370.09
non exempt amount $
__Computed on the consideration or value of
property conveyed.
__Computed on the consideration of value less
liens or encumbrances remaining at time of sale.

Signature of Declarant or Agent
AP# 941-186-71          Selwa Ishoo

## TRUSTEE'S DEED UPON SALE

**CAL-WESTERN RECONVEYANCE CORPORATION** (herein called trustee)
does hereby grant and convey, but without covenant or warranty, express or implied to
**FEDERAL HOME LOAN MORTGAGE CORPORATION** (herein called Grantee) the real property in the
county of **ALAMEDA**, State of California described as follows:

**LOT 4, BLOCK 7, TRACT 2485, FILED MAY 3, 1963, MAP BOOK 46, PAGES 37 TO 40, ALAMEDA
COUNTY RECORD. MORE COMPLETELY DESCRIBED IN ATTACHED EXHIBIT A.**
The street address and other common designation, if any, of the real property described above is purported to be:
**8552 BRIARWOOD LANE
DUBLIN CA 94568**

This conveyance is made pursuant to the authority and powers vested in said Trustee, as Trustee, or Successor
Trustee, or Substituted Trustee, under that certain Deed of Trust executed by
**MICHAEL W WRIGHT AND ROBERTA SOHAL, HUSBAND AND WIFE** as Trustor, recorded **January
03, 2008**, as Document No. **2008001730**, in Book XX, page XX, of Official Records in the Office of the
Recorder of **ALAMEDA** County, California, and pursuant to the Notice of Default recorded **June 21, 2010**, as
Document No. **10-172803** in Book XX, page XX of Official Records of said County, Trustee having complied
with all applicable statutory requirements of the State of California and performed all duties required by said
Deed of Trust, including, among other things, as applicable, the mailing of copies of notices or the publication of
a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of
copies of the notice of sale or the publication of a copy thereof.

TDUSCA DOC                                                    Page 1 of 2

EXHIBIT

TRA # 26-001
Trust No. 1285913-10
Loan No. XXXXXX9214

At the place fixed in the Notice of Trustee's Sale, said Trustee did sell said property above described at public
auction on January 13, 2011 to said Grantee, being the highest bidder therefore, for $426,370.09 cash, lawful
money of the United States, in satisfaction pro tanto of the indebtedness then secured by said Deed of Trust.

**CAL-WESTERN RECONVEYANCE CORPORATION**

Dated: January 13, 2011

Wendy V. Perry, AVP

State of California )
County of San Diego)
On **JAN 2 0 2011** before me, Rosalyn Hall
a Notary Public, personally appeared Wendy V. Perry, AVP , who proved
to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of
California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal (Seal)

Signature

ROSALYN HALL
COMM. #1793727
Notary Public - California
San Diego County
My Comm. Expires Mar. 16, 2012

TDUSCA.DOC

Page 1 of 2

**EXHIBIT A**

LOT 4, BLOCK 7, TRACT 2485, FILED MAY 3, 1963, MAP BOOK 46, PAGES 37 TO 40, ALAMEDA COUNTY RECORDS

EXCEPTING THEREFROM ONE-HALF OF ALL OIL, GAS OTHER HYDROCARBON SUBSTANCES IN AND UNDER OR THAT MAY BE PRODUCED FROM A DEPTH BELOW 500 FEET OF THE SURFACE OF SAID LAND WITHOUT RIGHT OF ENTRY UPON THE SURFACE OF SAID LAND FOR THE PURPOSES OF MINING, DRILLING EXPLORING OR EXTRACTING SUCH OIL, GAS, AND OTHER HYDROCARBON SUBSTANCES OR OTHER USE OR RIGHTS IN OR TO ANY PORTION OF THE SURFACE OF SAID LAND TO A DEPTH OF 500 FEET BELOW THE SURFACE THEREOF, AS SHONE ON THE DEED TO PLEASANTON RIDGE, INC., RECORDED APRIL 26, 1963, IN REEL 886, IMAGE 400.



PITE
DUNCAN
LLP

Steven W. Pite *CA NV WA*
John D. Duncan *CA TX WA*
Peter J. Salmon
*CA ID OR WA*
David E. McAllister
*AZ CA HI OR UT WA*

Rochelle L. Stanford
*AZ CA HI WA*
Josephine E. Salmon
*AK AZ CA MT*
Laurel I. Handley *AZ CA ID NV*
Daniel R. Gamez *CA TX*
Eddie R. Jimenez *CA NV TX*
Susan L. Petit *AK CA HI WA*
Douglas A. Toleno *AZ CA*
Cuong M. Nguyen *CA NV*
Casper J. Rankin *CA OR*
Charles A. Correia *CA*
Brian A. Paino *AZ CA TX WA*
Christopher McDermott *CA*
Jillian A. Benbow *CA*
Thomas N. Abbott *CA*
Drew A. Callahan *CA*
Natalie T. Nguyen *CA*
Genail M. Anderson *CA*
Ellen Chu *CA NN*
Erin L. Laney *CA*
Allen B. Acierno *CA*
William L. Partridge *CA*
Christopher L. Peterson *CA*
Jason W. Shaw *CA*
Jason L. Eliaser *CA*
Joseph C. Delmotte *CA*
Gabriel Ozel *CA NY TX*
Balpreet K. Thiara *CA*
Stefanie A. Schlil *CA*
Hieu T. Pham *CA*
Carla M. Stalcup *CA*
Elana J. Moeder *CA*
Eric J. Testan *CA*
Catherine T. Vinh *CA*
David M. Liu *CA*
Christina M. Harper *AZ*
Kyle J. Shelton *AZ*
Gregg A. Hubley *NV*
Ace C. Van Patten *ID NV*
Christina S. Bhirud *NV*
Beau Bennett *CA NV*
Allison R. Schmidt *NV*
Christopher A. J. Swift *CA NV*
David C. Welling *NV*
Eric A. Marshack *OR WA*
Tracy D. Fink *TX*
Claire A. Mock *CA TX*
Spencer Macdonald *TX*
Jesse Baker *OR UT WA*
Shannon L. Kingston *WA*
Adele Vigil Karnoum *NV*
David J. Boulanger *OR*
Carrie Thompson Jones *AZ*
Chad L. Butler *CA*
Alexis M. Barnhoff *CA NV*
Rachel A. Dufresa *AZ CA*
Gilbert R. Yabes *CA*
Alison C. Lienau *CA CA*
Matthew M. McArthur *NV*
Matthew R. Clark *HI CA*
Arnold L. Graff *CA HI*
Rachael R. Whalen *CA*
Philip J. Giles *CA*
Parула Kowald *CA*
Renee Belcastro *CA*
Gagan G. Vanderswaran *CA*
Jared D. Bissell *CA*
Ben H. Adams *CA*
Todd S. Garan *CA*

*Mailing - Bankruptcy*
4375 Jutland Drive Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
*Mailing - Unlawful Detainer*
4375 Jutland Drive Suite 200
P.O. Box 17944
San Diego, CA 92177-0934
*Overnight*
4375 Jutland Drive Suite 200
San Diego, CA 92117
Ph. (858) 750-7600
Fax. (619) 590-1385

February 1, 2011

## NOTICE TO QUIT

TO:   MICHAEL W WRIGHT, ROBERTA SOHAL
      AND ALL OCCUPANTS, TENANTS, OR SUBTENANTS
      8552 BRIARWOOD LANE, DUBLIN, CA 94568

NOTICE IS HEREBY GIVEN that the subject premises has been duly sold in accordance with Section 2924 of the Civil Code of the State of California under the power of sale contained in the Deed of Trust encumbering the property. Title to the property has been duly perfected.

1.   IF YOU ARE A FORMER OWNER OR SUCCESSOR TO A FORMER OWNER, within three (3) days after service on you of this Notice you are required to quit and deliver up possession of the premises to the undersigned, who is authorized to receive the same. If you fail to deliver possession this office will institute legal proceedings against you to recover possession of said premises and for rents or damages as provided by law, including up to $600 (six hundred dollars) in addition to the actual damages.

2.   IF YOU ARE A BONA FIDE TENANT under the Protecting Tenants at Foreclosure Act of 2009, you may have the option to begin paying rent to the new landlord and to remain as a tenant until ninety days after service of this Notice, or until the end of a valid lease term, whichever is later. You are a "bona fide" tenant if:

     (a) you are not the former owner or the child, spouse or parent of the former owner; **and**
     (b) you entered into the lease as a result of an arms-length transaction; **and**
     (c) the rent due under your lease or rental agreement is not substantially less than fair market rent for the property or your rent is reduced due to a Federal, State or local subsidy.

If you believe you are a "bona fide tenant" pursuant to the criteria above, please contact our office immediately at (858) 750-7600 so we can arrange for Freddie Mac to assume your lease and for you to continue paying rent. If you do not contact us immediately to request that Freddie Mac assume your lease, you must vacate the property by **May 1, 2011.**

3.   IF YOU ARE NOT A "BONA FIDE" TENANT OR A FORMER OWNER, you are required to quit and vacate the premises within sixty days of service of this Notice on you. This Notice to you is given pursuant to the provisions of Section 1161a(b)(3) and 1161b of the Code of Civil Procedure of the State of California.

Under the Servicemembers Civil Relief Act, 50 App. U.S.C.A. § 18 *et. seq.*, active duty military servicemembers may have additional rights and protections. Please notify our office **immediately** if you or any other occupants in the property are active duty military. You may also wish to contact a member of your Judge Advocate Corps.

If you have any questions please contact our office at (858) 750-7600.

DATED: February 1, 2011          By:  _Renee Belcastro_
                                       JASON W SHORT
                                       RENEE BELCASTRO
                                       PITE DUNCAN, LLP

EXHIBIT 3

Attorneys licensed to practice in Alaska, Arizona, California, Hawaii
Idaho, Nevada, New York, Oregon, Texas, Utah and Washington
*See above or visit www.piteduncan.com re individual attorney admissions.*

January 5, 2011                    Advanced Attorney Services, Inc. fax (619) 299-5028

| PITE DUNCAN, LLP<br>4375 JUTLAND DRIVE, SUITE 200 P.O. BOX 17934 SAN DIEGO, CA 92177<br><br>TELEPHONE NO · (858) 750-7600   FAX NO. (Optional): (619) 590-1385<br>E-MAIL ADDRESS (Optional): | FOR COURT USE ONLY |
|---|---|
| **PROOF OF SERVICE** | HEARING DATE: | DAY | TIME: | DEPT : | BY FAX<br>Ref No. or File No<br>000028-008427 |

T THE TIME OF SERVICE I WAS AT LEAST 18 YEARS OF AGE AND NOT A PARTY TO THIS ACTION, AND I **SERVED**
OPIES OF THE:

**3/90 Day Notice to Vacate; Notice to Any Renters**

   NAME OF OCCUPANT:  **MICHAEL W WRIGHT, ROBERTA SOHAL AND ALL OCCUPANTS, TENANTS OR SUB-TENANTS**

   DATE OF POSTING:  **February 3, 2011**
   TIME OF POSTING:  **05:07 pm**

   DATE OF MAILING:  **February 4, 2011**
   PLACE OF MAILING:  **FREMONT**

   ADDRESS OF PROPERTY:  **8552 BRIARWOOD LANE.**
      **DUBLIN, CA 94568**
      **(HOME)**

:ANNER OF SERVICE:
   **By posting in a conspicuous place on the property therein described, there being no person of suitable age or discretion to
be found at any know place of residence or business of said tenants; and mailing a copy by first class mail, postage
pre-paid, and depositing said copies in the United States Mail, in a sealed envelope, addressed as stated above. CCP 1162(3).**

Fee for Service: 130.50
County: **STANISLAUS**
Registration No.: **08-018**
Advanced Attorney Services, Inc.
3500 Fifth Ave.
San Diego, CA 92103
(619) 299-2012

·declare under penalty of perjury under the laws of the
The State of California that the foregoing information
contained in the return of service and statement of
service fees is true and correct and that this declaration
was executed on **February 8, 2011**.

Signature: _____
      **JIM CATES**

**PROOF OF SERVICE**

Order#. 288427N2/30DAY

# SUMMONS
## (CITACION JUDICIAL)
### UNLAWFUL DETAINER—EVICTION
### (RETENCIÓN ILÍCITA DE UN INMUEBLE—DESALOJO)

**NOTICE TO DEFENDANT:** Michael W Wright, Roberta Sohal and Does I
*(AVISO AL DEMANDADO):* through X, Inclusive

**YOU ARE BEING SUED BY THE PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Federal Home Loan Mortgage Corporation, Its Successors and/or Assigns

| FOR COURT USE ONLY |
|---|
| *(SOLO PARA USO DE LA CORTE)* |
| ENDORSED |
| FILED |
| ALAMEDA COUNTY |
| APR 0 4 2011 |
| CLERK OF THE SUPERIOR COURT |
| By M. WILLIAMS |
| Deputy |

You have 5 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. (To calculate the five days, count Saturday and Sunday, but do not count other court holidays. If the last day falls on a Saturday, Sunday or a court holiday then you have the next court day to file a written response.) A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

Tiene 5 DIAS DE CALENDARIO despues de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. (Para calcular los cinco días, cuente los sábados y los domingos pero no los otros días feriados de la corte. Si el último día cae en sábado o domingo, o en un día en que la corte esté cerrada, tiene hasta el próximo día de corte para presentar una respuesta por escrito). Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| 1 | The name and address of the court is: *(El nombre y dirección de la corte es):* | Superior Court of California County of Alameda - Hayward Hall of Justice 24405 Amador Street Hayward CA 94544 | CASE NUMBER *(Número del caso)* RG11589034 |
|---|---|---|---|

2. The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
   *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

   JASON W SHORT, SBN 263667    4375 Jutland Drive, Suite 200    (phone) (858) 750-7600
   RENEE BELCASTRO, SBN 270492    P.O. Box 17934, San Diego CA 92177    (fax) (619) 590-1385

3. *(Must be answered in all cases)* An **unlawful detainer assistant** (Bus. & Prof. Code, §§ 6400—6415) [X] did not [ ] did
   for compensation give advice or assistance with this form. *(If plaintiff has received any help or advice for pay from an unlawful detainer assistant, complete item 6 on the next page.)*

| Date APR 0 4 2011 *(Fecha)* | Clerk, by M. WILLIAMS *(Secretario)* | Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citation use el formulario Proof of Service of Summons, (form POS-010).)*

| [SEAL] | 4. | NOTICE TO THE PERSON SERVED: You are served |
|---|---|---|

   a. [ ] as an individual defendant
   b. [ ] as the person sued under the fictitious name of *(specify)*:
   c. [ ] as an occupant
   d. [ ] on behalf of *(specify)*:
      under: [ ] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
             [ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
             [ ] CCP 416.40 (association of partnership)    [ ] CCP 416.90 (authorized person)
             [ ] CCP 415.46 (occupant)    [ ] Other *(specify)*:
   5. [ ] by personal delivery on *(date)*:

Form Adopted for Mandatory Use
Judicial Council of California
SUM-130 [Rev. July 1 2009]

SUMMONS—UNLAWFUL DETAINER—EVICTION

Code of Civil Procedure, §§ 412.20, 415.456, 1167
www.courtinfo.ca.gov

**SUM-130**

| PLAINTIFF *(Name)* Federal Home Loan | CASE NUMBER: |
|---|---|
| DEFENDANT *(Name):* Michael W Wright  Roberta Sohal, et al. | |

6. **Unlawful detainer assistant** *(complete if plaintiff has received any help or advise for pay from an unlawful detainer assistant)*
   a. Assistant's name:
   b. Telephone no .
   c. Street address, city, and zip.

   d. County of registration:
   e. Registration no.
   f. Registration expires on *(date):*

Form Accepted for Mandatory Use
Judicial Council of California
SUM-130 [Rev. July 1, 2009]

SUMMONS--UNLAWFUL DETAINER—EVICTION

Code of Civil Procedure, §§ 412.20, 416.466. 1157
www.courtinfo.ca.gov

NOTICE: EVERYONE WHO LIVES IN THIS RENTAL UNIT MAY BE EVICTED BY COURT ORDER. READ THIS FORM IF YOU LIVE HERE AND IF YOUR NAME IS NOT ON THE ATTACHED SUMMONS AND COMPLAINT.

1) If you live here and you do not complete and submit this form within 10 days of the date of service shown on this form, you will be evicted without further hearing by the court along with the persons named in the Summons and Complaint.

2) If you file this form, your claim will be determined in the eviction action against the persons named in the Complaint.

3) If you do not file this form, you will be evicted without further hearing.

| CLAIMANT OR CLAIMANT'S ATTORNEY *(Name and Address)*. TELEPHONE NO.: | | FOR COURT USE ONLY |
|---|---|---|
| ATTORNEY FOR *(Name)* | | |
| **NAME OF COURT:** STREET ADDRESS MAILING ADDRESS CITY AND ZIP CODE BRANCH NAME | Superior Court of California - County of Alameda - Hayward Hall of Justice 24405 Amador Street Hayward, CA 94544 | |
| PLAINTIFF: | Federal Home Loan Mortgage Corporation, its successors and/or assigns | |
| DEFENDANT: | Michael W Wright, Roberta Sohal, and DOES I through X, inclusive | |

| **PREJUDGMENT CLAIM OF RIGHT TO POSSESSION** | CASE NUMBER. RG11569611 |
|---|---|
| Complete this form only if ALL of these statements are true: 1) You are NOT named in the accompanying Summons and Complaint. 2) You occupied the premises on or before the date the unlawful detainer (eviction) Complaint was filed. 3) You still occupy the premises. | *(To be completed by the process server)* DATE OF SERVICE *(Date that this form is served or delivered, and posted, and mailed by the officer or process server)* |

I DECLARE THE FOLLOWING UNDER PENALTY OF PERJURY:

1) My name is *(specify)*:

2) I reside at *(street address, unit No., city and ZIP code)*:

3) The address of "the premises" subject to this claim is *(address)*:

   8552 Briarwood Lane, Dublin, CA 94568

4) On *(insert date)*: [_____], the landlord or the landlord's authorized agent filed a complaint to recover possession of the premises. *(This date is the court filing date on the accompanying Summons and Complaint.)*

5) I occupied the premises on the date the complaint was filed *(the date in item 4)*. I have continued to occupy the premises ever since.

6) I was at least 18 years of age on the date the complaint was filed *(the date in item 4)*.

7) I claim a right to possession of the premises because I occupied the premises on the date the complaint was filed *(the date in item 4)*.

8) I was not named in the Summons and Complaint.

9) I understand that if I make this claim of right to possession, I will be added as a defendant to the unlawful detainer (eviction) action.

10) *(Filing fee)* I understand that I must go to the court and pay a filing fee of $_____ or file with the court the form "Application for Waiver of Court Fees and Costs." I understand that if I don't pay the filing fee or file with the court the form for waiver of court fees within 10 days from the date of service on this form (excluding court holidays), I will not be entitled to make a claim of right to possession

(Continued on reverse)

| PLAINTIFF (Name) FEDERAL HOME LOAN | CASE NUMBER |
|---|---|
| DEFENDANT (Name) MICHAEL W WRIGHT, ROBERTA SOHAL, et al | |

---

**NOTICE: If you fail to file this claim, you will be evicted without further hearing.**

---

11) (*Response required within five days after you file this form*) I understand that I will have *five days* (excluding court holidays) to file a response to the Summons and Complaint after I file this Prejudgment Claim of Right to Possession form.

12) **Rental agreement.** I have (*check all that apply to you*):
a) ☐ an oral rental agreement with the landlord.
b) ☐ a written rental agreement with the landlord.
c) ☐ an oral rental agreement with a person other than the landlord.
d) ☐ a written rental agreement with a person other than the landlord.
e) ☐ other (*explain*):

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

---

WARNING: Perjury is a felony punishable by imprisonment in the state prison.

---

Date:

............................................................................................
(TYPE OR PRINT NAME)                              (SIGNATURE OF CLAIMANT)

---

**NOTICE:** If you file this claim of right to possession, the unlawful detainer (eviction) action against you will be determined at trial    At trial, you may be found liable for rent, costs, and, in some cases, treble damages.

---

## NOTICE TO OCCUPANTS

**YOU MUST ACT AT ONCE if all the following are true:**

1) **You are NOT named in the accompanying Summons and Complaint.**
2) **You occupied the premises on or before the date the unlawful detainer (eviction) complaint was filed.** (*The date is the court filing date on the accompanying Summons and Complaint.*)
3) **You still occupy the premises.**

(*Where to file this form*) You can complete and SUBMIT THIS CLAIM FORM WITHIN 10 DAYS from the date of service (on the reverse of this form) at the court where the unlawful detainer (eviction) complaint was filed

(*What will happen if you do not file this form*) If you do not complete and submit this form (and pay a filing fee or file the form for proceeding in forma pauperis if you cannot pay the fee), YOU WILL BE EVICTED.

After this form is properly filed, you will be added as a defendant in the unlawful detainer (eviction) action and your right to occupy the premises will be decided by the court. *If you do not file this claim, you will be evicted without a hearing.*

---

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):

JASON W SHORT, SBN 263667
RENEE BELCASTRO, SBN 270492
PITE DUNCAN, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17934, San Diego, CA 92177-0934
Phone: 858-750-7600
Facsimile: 619-590-1385

ATTORNEY FOR (Name): Federal Home Loan

FOR COURT USE ONLY

ENDORSED FILED ALAMEDA COUNTY

APR 0 4 2011

CLERK OF THE SUPERIOR COURT
By M. WILLIAMS, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

STREET ADDRESS: 24405 Amador Street
MAILING ADDRESS:
CITY AND ZIP CODE: Hayward, CA 94544
BRANCH NAME: County of Alameda - Hayward Hall of Justice

CASE NAME: Federal Home Loan vs Michael W Wright

## CIVIL CASE COVER SHEET

[ ] Unlimited (Amount demanded exceeds $25,000)
[X] Limited (Amount demanded is $25,000 or less)

**Complex Case Designation**

[ ] Counter [ ] Joinder

Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: HG11569019

JUDGE:

DEPT:

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[X] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (*not specified above*) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (*not specified above*) (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties
b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [ ] Substantial amount of documentary evidence
d. [ ] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (*check all that apply*): a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action (*specify*): 1
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (*You may use form CM-015.*)

Date: March 29, 2011

RENEE BELCASTRO, SBN 270492
(TYPE OR PRINT NAME)

(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740
Cal. Standards of Judicial Administration, std 3.10

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
  Contract/Warranty Breach—Seller Plaintiff (*not fraud or negligence*)
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case—Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
  Writ–Other Limited Court Case
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment (*non-domestic relations*)
  Sister State Judgment
  Administrative Agency Award (*not unpaid taxes*)
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
  Declaratory Relief Only
  Injunctive Relief Only (*non-harassment*)
  Mechanics Lien
  Other Commercial Complaint Case (*non-tort/non-complex*)
  Other Civil Complaint (*non-tort/non-complex*)
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

**NOTICE: EVERYONE WHO LIVES IN THIS RENTAL UNIT MAY BE EVICTED BY COURT ORDER. READ THIS FORM IF YOU LIVE HERE AND IF YOUR NAME IS NOT ON THE ATTACHED SUMMONS AND COMPLAINT.**

1) If you live here and you do not complete and submit this form within 10 days of the date of service shown on this form, you will be evicted without further hearing by the court along with the persons named in the Summons and Complaint.
2) If you file this form, your claim will be determined in the eviction action against the persons named in the Complaint.
3) If you do not file this form, you will be evicted without further hearing.

| CLAIMANT OR CLAIMANT'S ATTORNEY (Name and Address) TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|
| ATTORNEY FOR (Name) | |

| | |
|---|---|
| **NAME OF COURT:** STREET ADDRESS MAILING ADDRESS CITY AND ZIP CODE BRANCH NAME | Superior Court of California - County of Alameda - Hayward Hall of Justice 24405 Amador Street Hayward, CA 94544 |
| PLAINTIFF: | Federal Home Loan Mortgage Corporation, its successors and/or assigns |
| DEFENDANT: | Michael W Wright, Roberta Sohal, and DOES I through X, inclusive |

| | CASE NUMBER |
|---|---|
| **PREJUDGMENT CLAIM OF RIGHT TO POSSESSION** | RG11569039 |
| **Complete this form only if ALL of these statements are true:** 1) You are NOT named in the accompanying Summons and Complaint. 2) You occupied the premises on or before the date the unlawful detainer (eviction) Complaint was filed. 3) You still occupy the premises. | (To be completed by the process server) DATE OF SERVICE: (Date that this form is served or delivered and posted and mailed by the officer or process server) |

I DECLARE THE FOLLOWING UNDER PENALTY OF PERJURY:

1) My name is (specify):
2) I reside at (street address, unit No., city and ZIP code):
3) The address of "the premises" subject to this claim is (address):

8552 Briarwood Lane, Dublin CA 94568

4) On (insert date): [_____], the landlord or the landlord's authorized agent filed a complaint to recover possession of the premises. (This date is the court filing date on the accompanying Summons and Complaint.)
5) I occupied the premises on the date the complaint was filed (the date in item 4). I have continued to occupy the premises ever since.
6) I was at least 18 years of age on the date the complaint was filed (the date in item 4).
7) I claim a right to possession of the premises because I occupied the premises on the date the complaint was filed (the date in item 4).
8) I was not named in the Summons and Complaint.
9) I understand that if I make this claim of right to possession, I will be added as a defendant to the unlawful detainer (eviction) action.
10) (Filing fee) I understand that I must go to the court and pay a filing fee of $_____ or file with the court the form "Application for Waiver of Court Fees and Costs." I understand that if I don't pay the filing fee or file with the court the form for waiver of court fees within 10 days from the date of service on this form (excluding court holidays), I will not be entitled to make a claim of right to possession.

(Continued on reverse)

**PREJUDGMENT CLAIM OF RIGHT TO POSSESSION** Code of Civil Procedure, §§ 415.46 715.010, 715.020, 1174.25

| PLAINTIFF (Name). FEDERAL HOME LOAN | CASE NUMBER |
| DEFENDANT (Name) MICHAEL W WRIGHT, ROBERTA SOHAL, et al | |

---

**NOTICE: If you fail to file this claim, you will be evicted without further hearing.**

---

11) (*Response required within five days after you file this form*) I understand that I will have *five days* (excluding court holidays) to file a response to the Summons and Complaint after I file this Prejudgment Claim of Right to Possession form.

12) **Rental agreement.** I have (*check all that apply to you*):
a) ☐ an oral rental agreement with the landlord.
b) ☐ a written rental agreement with the landlord.
c) ☐ an oral rental agreement with a person other than the landlord.
d) ☐ a written rental agreement with a person other than the landlord.
e) ☐ other (*explain*):

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

---

WARNING: Perjury is a felony punishable by imprisonment in the state prison

---

Date:

.................................................
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF CLAIMANT)

---

**NOTICE:** If you file this claim of right to possession, the unlawful detainer (eviction) action against you will be determined at trial. At trial, you may be found liable for rent, costs, and, in some cases, treble damages.

---

### NOTICE TO OCCUPANTS

YOU MUST ACT AT ONCE if all the following are true:
1) You are NOT named in the accompanying Summons and Complaint.
2) You occupied the premises on or before the date the unlawful detainer (eviction) complaint was filed. (*The date is the court filing date on the accompanying Summons and Complaint.*)
3) You still occupy the premises.

(*Where to file this form*) You can complete and SUBMIT THIS CLAIM FORM WITHIN 10 DAYS from the date of service (on the reverse of this form) at the court where the unlawful detainer (eviction) complaint was filed.

(*What will happen if you do not file this form*) If you do not complete and submit this form (and pay a filing fee or file the form for proceeding in forma pauperis if you cannot pay the fee), YOU WILL BE EVICTED.

After this form is properly filed, you will be added as a defendant in the unlawful detainer (eviction) action and your right to occupy the premises will be decided by the court. *If you do not file this claim, you will be evicted without a hearing.*

---

# Exhibit L



# State of California

## Department of Social Services

Facility Number: 015601395

Effective Date: 10/10/2008                     Total Capacity: 6

In accordance with applicable provisions of the Health and Safety Code of California, and its rules and regulations; the Department of Social Services hereby issues

## this License to

X PIZZA LLC

to operate and maintain a

RESIDENTIAL CARE ELDERLY

## Name of Facility

ANGELS ILIE & MARIA GOLDEN AGE CARE
8552 BRIARWOOD LANE
DUBLIN, CA 94568

This License is not transferable and is granted solely upon the following:

AGE RANGE 60 AND OVER. ALL MAY BE NON-AMBULATORY. THIS LICENSE IS SUBJECT TO THE TERMS AND CONDITIONS OF THE HOSPICE WAIVER FOR TWO CLIENTS.

Client Groups Served:

ELDERLY

Complaints regarding services provided in this facility should be directed to:

CCLD Regional Office                     (650) 266-8800

Jeffrey Hiratsuka
Deputy Director,                         Authorized Representative of Licensing Agency
Community Care Licensing Division

LIC203A (03/07) FAS          **POST IN A PROMINENT PLACE**          CU-TAO18b
Print Date 01/05/2011

1   **Recording requested by and after**
    **recording return to:**

2

3   Patrick E. Guevara
    Randick O'Dea & Tooliatos, LLP
    5000 Hopyard Road, Suite 400

4   Pleasanton, California 94588

5   Attorneys for Plaintiffs ROBERTA
    SOHAL and MICHAEL W. WRIGHT         (space above this line for recorder's use)

6

7

8   **Phillip G. Vermont, SBN 132035**
    **Patrick E. Guevara, SBN 202727**
    **RANDICK O'DEA & TOOLIATOS, LLP**

9   5000 Hopyard Road, Suite 400
    Pleasanton, California   94588

10   Telephone    (925) 460-3700
    Facsimile     (925) 460-0969

11
    Attorneys for Plaintiffs ROBERTA SOHAL and

12   MICHAEL W. WRIGHT

13
                   **SUPERIOR COURT OF CALIFORNIA**

14
                      **COUNTY OF ALAMEDA**

15

16
  ROBERTA SOHAL and MICHAEL W.     Case No.:   RG11570732

17   WRIGHT,

                           **NOTICE OF PENDENCY OF ACTION (*LIS***

18            Plaintiffs,             **PENDENS*)**

19           vs.

20   FEDERAL HOME LOAN MORTGAGE
    CORPORATION, a Federally chartered

21   corporation doing business as FREDDIE
    MAC, WELLS FARGO BANK, N.A., a

22   Federally chartered national association,
    CAL-WESTERN RECONVEYANCE

23   CORPORATION, a California
    corporation, LSI TITLE COMPANY, a

24   California corporation, and DOES 1
    through 10, INCLUSIVE,

25
               Defendants.

26

27

28

                                              1

1         PLEASE TAKE NOTICE that this action was commenced in the above-named Court on

2    April 13, 2011 by Plaintiffs ROBERT SOHAL and MICHAEL W. WRIGHT against Defendants

3    FEDERAL HOME LOAN MORTGAGE CORPORATION d/b/a FREDDIE MAC, WELLS

4    FARGO BANK, N.A., CAL-WESTERN RECONVEYANCE CORPORATION, and LSI TITLE

5    COMPANY.

6         This action is for wrongful foreclosure, fraud, to set aside a trustee's sale, and to quiet

7    title, among others, and affects title to and the right to possess the real property at 8552

8    Briarwood Lane, Dublin, Alameda County, California 94568, Assessor's Parcel No. 941-0186-

9    071, and legally described as: "Lot 4, Block 7, Tract 2485, filed May 3, 1963, Map Book 46,

10   pages 37 to 40, Alameda County Records. Excepting therefrom one-half of all oil, gas other

11   hydrocarbon substances in and under or that may be produced from depth below 500 feet of the

12   surface of said land without right of entry upon the surface of said land for the purposes of

13   mining, drilling exploring or extracting such oil, gas, and other hydrocarbon substances or other

14   use or rights in or to any portion of the surface of said land to a depth of 500 feet below the

15   surface thereof, as shone on the Deed to Pleasanton Ridge, Inc., recorded April 26, 1963, in Reel

16   866, Image 400."

17        The parties to this action are set forth in the caption above and have been provided notice

18   of Plaintiffs' intent to file this recording.

19

20   Date:  April 13, 2011               RANDICK O'DEA & TOOLIATOS, LLP

21

22                               By:

23                                  Patrick E. Guevara

24                          Attorneys for Plaintiffs

25

26

27

28

                                                           2

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

**CIVIL CODE § 1189**

State of California

County of *Alameda*

On *April 13, 2011* before me, *Susan Betti*
Date                                          Here Insert Name and Title of the Officer

personally appeared *Patrick E. Guevara*
                                            Name(s) of Signer(s)

_____

**SUSAN BETTI**
Commission # 1923560
Notary Public - California
Alameda County
My Comm. Expires Feb 25, 2015

*Place Notary Seal Above*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: *Susan Betti*
Signature of Notary Public

--- **OPTIONAL** ---

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____

☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer's Name: _____

☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

# EXHIBIT B

1  PETER J. SALMON (SBN 174386)
   THOMAS N. ABBOTT (SBN 245568)
2  PITE DUNCAN, LLP
   4375 JUTLAND DRIVE, SUITE 200
3  P.O. BOX 17935
   SAN DIEGO, CA 92177-0935
4  TELEPHONE: (858) 750-7600
   FACSIMILE: (619) 590-1385
5  E-Mail: tabbott@piteduncan.com

6  Attorneys for Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION
   [*erroneously sued as FEDERAL HOME LOAN MORTGAGE CORPORATION, a Federally*
7  *chartered corporation doing business as FREDDIE MAC*]

8                    **SUPERIOR COURT OF CALIFORNIA**

9                         **COUNTY OF ALAMEDA**

10 ROBERTA SOHAL and MICHAEL W.          Case No. RG11570732
   WRIGHT,
11                                        **NOTICE TO ADVERSE PARTIES OF**
              Plaintiffs,                 **REMOVAL TO FEDERAL COURT**
12
                 v.
13
   FEDERAL HOME LOAN MORTGAGE
14 CORPORATION, a Federally chartered
   corporation doing business as FREDDIE
15 MAC, WELLS FARGO BANK, N.A., a
   Federally chartered national association, CAL-
16 WESTERN RECONVEYANCE
   CORPORATION, a California corporation,
17 LSI TITLE COMPANY, a California
   corporation, and DOES 1 through 10,
18 INCLUSIVE,

19            Defendants.

20 /./.

21 /./.

22 /./.

23 /./.

24 /./.

25 /./.

26 /./.

27 /./.

28 /./.

                                   -1-

1      **TO THE CLERK OF THE ABOVE-ENTITLED COURT, TO THE PARTIES AND**

2   **THEIR ATTORNEYS OF RECORD:**

3      **PLEASE TAKE NOTICE** that Defendant FEDERAL HOME LOAN MORTGAGE

4   CORPORATION ("Freddie Mac"), Defendant in the above-styled action, has this date filed in the

5   United States District Court for the Northern District of California - Oakland Division a Notice of

6   Removal, a copy of which is attached as **Exhibit A,** thereby effecting removal of this case.

7

8                              Respectfully Submitted,

9   Dated: April 20, 2011               PITE DUNCAN, LLP

10

11                              _____
                                Thomas N. Abbott
12                              Attorneys for Defendant FEDERAL HOME LOAN
                                MORTGAGE CORPORATION [*erroneously sued as*
13                              *FEDERAL   HOME   LOAN   MORTGAGE*
                                *CORPORATION, a Federally chartered corporation*
14                              *doing business as FREDDIE MAC*]

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-