United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTA SOHAL, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>FEDERAL HOME LOAN MORTGAGE CORPORATION, et al.,<br><br>  Defendants. | No. C 11-01941 JSW<br><br>**ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER** |

## INTRODUCTION

Now before the Court for consideration is the *Ex Parte* Application for a Temporary Restraining Order filed by Plaintiff's Roberta Sohal and Michael Wright ("Plaintiffs"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). For the reasons set forth in the remainder of this Order, Plaintiffs' application is DENIED.

## BACKGROUND

On or about December 11, 2007, Plaintiffs applied for an obtained a loan in the amount of $417,000 from Wells Fargo Bank N.A. to purchase property located at 8552 Briarwood Lane, Dublin, California (the "Subject Property"). (*See* Compl. ¶¶ 16-17, Ex. B ("Deed of Trust").)[1] According to Plaintiffs, they purchased the Subject Property for the specific purpose of operating a Residential Care Facility for the Elderly ("RCFE"), pursuant to the California

---

[1] The Complaint and its exhibits are attached as Exhibits 1 and 2 to Plaintiffs' *Ex Parte* Application.

1  Health and Safety Code. The RCFE is known as the Angels Ilie & Maria Golden Age Care, and
2  it specializes in providing a residence and special care for elderly citizens suffering from
3  dementia and Alzheimer's disease. (*See, e.g.,* Declaration of Roberta Sohal ("Sohal Decl."), ¶¶
4  3-4.)[2] Ms. Sohal attests that Plaintiffs currently house 5 residents at the Subject Property, who
5  are between the ages of 83 and 97 years old, and "all of whom are severely ill with dementia
6  and/or Alzheimer's disease and generally cannot walk." (Sohal Decl., ¶ 5.) Plaintiffs also attest
7  that since they purchased the Subject Property, they have expended over $65,000 to renovate it
8  in order to meet the residents' needs. (Sohal Decl., ¶ 6; Declaration of Michael Wright
9  ("Wright Decl."), ¶ 3.)[3]

10  It is undisputed that Plaintiffs were unable to make mortgage payments on the Subject
11  Property beginning in approximately January 2010. (*See* Wright Decl., ¶¶ 4-5, Ex. A.)
12  Plaintiffs retained the services of Taj Lockett of Foundation Loan Consulting to assist them in
13  obtaining a loan modification. (*Id.* ¶ 5; Declaration of Taj Lockett ("Lockett Decl."), ¶ 2.)[4] It
14  also is undisputed that there were discussions between Plaintiffs and Wells Fargo regarding a
15  possible modification of the loan. (*See generally* Locket Decl., ¶¶ 6-23; Wright Decl., ¶¶ 7-22,
16  Exs. A-I; Declaration of Colleen M. Kelley in Opposition to *Ex Parte* Application ("Kelley
17  Decl."), ¶¶ 10-14.)

18  It also is undisputed that on or about June 19, 2010, a Notice of Default was issued and
19  subsequently recorded. (Kelley Decl., Ex. D.) A Trustee's Sale was scheduled for October 12,
20  2010, but that sale was postponed several times. (Kelley Decl., ¶¶ 10-14; Declaration of
21  Yvonne Wheeler of Cal-Western Reconveyance Corporation, ¶ 7, Ex. K.) The Trustee's sale
22  went forward on January 13, 2011. (*Id.*, ¶ 14.) According to Plaintiffs, they had requested a
23  further postponement, were not advised that the sale would go forward, and learned that the sale
24  had happened on January 18, 2011. (Wright Decl., ¶¶ 22-25, Ex. J; Locket Decl., ¶¶ 22-23.)

---

[2] The Sohal Declaration is attached as Exhibit 3 to the Ex Parte Application.

[3] The Wright Declaration is attached as Exhibit 4 to the Ex Parte Application.

[4] The Locket Declaration is attached as Exhbit 5 to the Ex Parte Application.

2

It is undisputed that Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") purchased the Subject Property at the Trustee's Sale. (Kelley Decl., ¶ 9, Ex. M; Compl., Ex. J.) On or about February 1, 2011, Freddie Mac served a Notice to Quit on Plaintiffs, and, on April 4, 2011, it filed an unlawful detainer action (the "Unlawful Detainer Action") in the Superior Court of the State of California, County of Alameda ("Alameda County Superior Court"). (Compl., ¶¶ 62-63, Ex. K.)

On April 13, 2011, Plaintiffs filed this action in Alameda County Superior Court, against Freddie Mac, Wells Fargo Bank, N.A., Cal-Western Reconveyance Corporation, and LSI Title Company. In their Complaint, Plaintiffs assert claims for wrongful foreclosure, breach of oral contract, promissory estoppel, fraud, negligent misrepresentation, lender negligence, trustee negligence, violations of California Business and Professions Code, setting aside the trustee sale, and quiet title. On April 21, 2011, Freddie Mac removed this action pursuant to 12 U.S.C. § 1452(f). The Unlawful Detainer action remains pending in Alameda County Superior Court.

On April 29, 2011, Plaintiffs filed their *Ex Parte* application for a temporary restraining order.

## ANALYSIS

In their application for a Temporary Restraining Order, Plaintiffs ask this Court to stay the Unlawful Detainer Action pending trial of this action. (*Ex Parte* App. at 2:16-19.) Freddie Mac argues that the Anti-Injunction Act, 28 U.S.C. § 2283, precludes this Court from granting Plaintiffs the relief they seek. The Court agrees. Pursuant to the Anti-Injunction Act, a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "The limitations expressed in the Anti-Injunction Act 'rest[] on the fundamental constitutional independence of the States and their courts,' *Atlantic Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970), and reflect 'Congress' considered judgment as to how to balance the tensions inherent in such a system,' *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988)." *Sandpiper Village*

*Condo. Ass'n v. Louisiana-Pacific Corp.*, 428 F.3d 831, 842 (9th Cir. 2005). "[T]he Act is designed to prevent friction between federal and state courts by barring federal intervention in all but he narrowest of circumstances." *Id.* A federal court should not enlarge the exceptions permitted under the act. "Rather, '[a]ny doubts as to the propriety of a federal injunction against state court proceedings [will] be resolved in favor of permitting the state courts to proceed...'" *Id.* (quoting *Atlantic Coast Line*, 398 U.S. at 297).

Plaintiffs contend that the "expressly authorized," exception applies in this case, relying on 12 U.S.C. § 1452, which provides, *inter alia*, that "all civil actions to which [Freddie Mac] is a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such actions, without regard to amount or value." 12 U.S.C. § 1452(f). "[I]n order to qualify under the 'expressly authorized' exception of the anti-injunction statute, a federal law need not contain an express reference to that statute." *Mitchum v. Foster*, 407 U.S. 225, 237 (1972). Rather, to determine whether the "expressly authorized" exception applies, the Court must determine "whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding." *Id.* at 238.

Plaintiffs cite no authority in support of their argument that Section 1452 falls within the "expressly authorized" exception, and this Court has not located any such authority. Further, it does not appear to this Court that Section 1452 creates the type of "right or remedy" enforceable in federal courts that have been found to fall within this exception. *See, e.g., Mitchum*, 407 U.S. at 242-43 (holding that Section 1983 falls within "expressly authorized" provision); *In re Bank of America Sec. Litig.,* 263 F.3d 795, 801 (8th Cir. 2001) (affirming injunction against state court proceedings and finding that Private Securities Litigation Reform Act's lead plaintiff provisions created "significant federal rights that previously did not exist"); *cf.* 28 U.S.C. 1446(d) ("Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded."). In light of the fact

4

1 that the exceptions to the Anti-Injunction act are to be construed strictly and any doubts as to
2 the propriety of a federal injunction are to be resolved in favor of permitting the state court to
3 proceed, the Court concludes the "expressly authorized" exception does not apply in this case.

4   Plaintiffs also argue that the "necessary in aid of jurisdiction" applies. "The [Anti-
5 Injunction] Act creates a presumption in favor of permitting parallel actions in state and federal
6 court." *Atlantic Coast Line*, 398 U.S. at 295; *see also Vendo v. Lektro Vend Corp.*, 433 U.S.
7 623, 642 (1977) (plurality) ("We have never viewed parallel in personam actions as interfering
8 with the jurisdiction of either court ...."). Thus, this exception applies when it is necessary "to
9 prevent a state court from so interfering with a federal court's consideration of disposition of a
10 case as to seriously impair the federal court's flexibility and authority to decide that case."
11 *Atlantic Coast Line*, 398 U.S. at 295. In the context of in personam actions, as is the case here,
12 "an injunction is justified only where a parallel state action threatens to render the exercise of
13 the federal court's jurisdiction nugatory." *Sandpiper Village*, 428 F.3d at 843-44 (internal
14 quotations and citations omitted). Based on the facts presented, the fact that the Court must
15 construe the exceptions narrowly, and in light of the fact that all doubts should be resolved in
16 favor of permitting the state court to proceed, the Court also finds that the "necessary in aid of
17 jurisdiction" exception does not apply.

18   Accordingly, the Court concludes that it is precluded by the Anti-Injunction Act from
19 staying the Unlawful Detainer Action. Therefore, Plaintiffs' *Ex Parte* Application is DENIED.
20 **IT IS SO ORDERED.**

22 Dated: May 18, 2011

                 JEFFREY S. WHITE
                 UNITED STATES DISTRICT JUDGE