United States District Court
For the Northern District of California

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROBERTA SOHAL, et al.,

Plaintiffs,

v.

FEDERAL HOME LOAN MORTGAGE CORPORATION, et al.,

Defendants.

_______________________________________/

No. C 11-01941 JSW

**ORDER RESOLVING MOTIONS FOR SUMMARY JUDGMENT**

**(Docket Nos. 87, 88)**

**INTRODUCTION**

This matter comes before the Court upon consideration of the motion for summary judgment or adjudication of claims, filed by Plaintiffs Roberta Sohal ("Sohal") and Michael W. Wright ("Wright") (collectively, "Plaintiffs"), and the motion for summary judgment or, in the alternative, for partial summary judgment filed by Defendants, Wells Fargo Bank, N.A. ("Wells Fargo") and Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively, "Defendants"). The Court has considered the parties' papers, relevant legal authority, the record in this case, and it has had the benefit of oral argument.

The Court HEREBY DENIES Plaintiffs' motion, and GRANTS IN PART AND DENIES IN PART Defendants' motion.

**BACKGROUND[1]**

On or about December 11, 2007, Plaintiffs applied for and obtained a loan in the amount of $417,000 from Wells Fargo to purchase property located at 8552 Briarwood Lane, Dublin, California (the "Property"). (Docket No. 87-2, Plaintiffs' Request for Judicial Notice in

[1] The facts set forth herein are undisputed, unless otherwise noted.

Support of Motion for Summary Judgment ("RJN in Supp."), Ex. 1 ("Deed of Trust"); Docket No. 92, Declaration of Matthew Overton ("Overton Decl"), ¶ 5. Ex A. ("Promissory Note").)[2] Plaintiffs use the Property as a California-licensed Residential Care Facility for the Elderly. (RJN in Supp., Ex. 10 (Declaration of Michael Wright in Support of Application for Temporary Restraining Order ("TRO") ("Wright TRO Decl."), ¶¶ 1, 3); RJN in Supp., Ex. 11 (Declaration of Roberta Sohal in Support of Application for TRO ("Sohal TRO Decl."), ¶¶ 3-5); Docket No. 91, Declaration of Ian J. Da Cunha ("Da Cunha Decl."), Ex. A (July 25, 2012 Deposition of Michael Wright ("Wright Depo. 7/25/12") at 100:17-22).)

The Deed of Trust and the Promissory Note identify Wells Fargo as the Lender. (Deed of Trust at 2; Promissory Note at 1, § 1.) The Promissory Note provides that "the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" (Promissory Note at 1, § 1.) It also provides that "a Mortgage, Deed of Trust or Security Deed (the 'Security Instrument'), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note." (Promissory Note at 3, § 10.)

In this case, the Security Instrument is the Deed of Trust. When Plaintiffs executed the Deed of Trust and the Promissory Note, Wells Fargo was the beneficiary and Fidelity National Title Insurance Company ("Fidelity") was the Trustee. (Deed of Trust at 2.) According to the terms of the Deed of Trust:

> Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder, by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. ... Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

---

[2] Plaintiffs submit requests for judicial notice in support of their motion for summary judgment, and in opposition to Defendants' motion for summary judgment. Defendants do not object to those requests. The documents are documents of which the Court can take judicial notice. *See* Fed. R. Evid. 201. The Court shall take judicial notice of the existence of the documents and the date on which they were recorded or filed. However, it shall not assume the truth of the facts therein. *See, e.g.*, *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001); *accord Fontenot v. Wells Fargo Bank*, 198 Cal. App. 4th 256, 264-67 (2011).

(Deed of Trust, at 16 § 24.)

On or about February 12, 2008, Wells Fargo sold the Promissory Note and the Deed of Trust to Freddie Mac. (Docket No. 87-1, Declaration of Phillip G. Vermont in Support of Motion for Summary Judgment ("Vermont Supp. Decl."), ¶ 2, Ex. A (Freddie Mac Responses to Special Interrogatories ("Freddie Mac ROSI") 1, 3), Ex. C (Freddie Mac Responses to Requests for Admissions ("Freddie Mac Resp. to RFA") 2.A); Docket No. 90, Declaration of Dean Meyer ("Meyer Decl."), ¶ 5; Overton Decl., ¶ 7.) Wells Fargo continued to service Plaintiffs' loan on Freddie Mac's behalf. (Meyer Decl., ¶¶ 6-7, Ex. A; Overton Decl., ¶ 8.) Freddie Mac notified Plaintiffs of this fact in a letter dated May 18, 2010. (Meyer Decl., ¶ 7, Ex. A; Freddie Mac Resp. to RFA 1.A.)

On December 12, 2008, Wells Fargo executed a limited power of attorney, in which it appointed officers of Cal-Western Reconveyance Corporation ("Cal-Western")

> its true and lawful attorney in fact for, and in its name, place and stead, and for its use and benefit, for every act customarily and reasonably necessary and appropriate for: The execution, acknowledgment, recording and delivery of beneficiary's Substitution of Trustee, ... Notices of Default on Mortgages, ...wherein the above named principal is the original or substituted beneficiary *or servicing agent for the beneficiary*, ...
>
> Giving and granting unto said attorney-in-fact full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done to accomplish the foregoing as the principal above named might or could do as if personally present.....

(Docket No. 89, Declaration of Yvonne Wheeler ("Wheeler Decl."), ¶ 5, Ex. A (emphasis added).)

Plaintiffs failed to make payments on the loan beginning in March 2010. (*See, e.g.*, Wright TRO Decl., ¶ 4; Sohal TRO Decl., ¶ 7; Overton Decl., ¶ 9, Ex. C.) Plaintiffs attempted to obtain a loan modification, and they hired a consultant to assist in these efforts. (Docket No. 95, RJN in Opp., Ex. 6 (Declaration of Taj Lockett ("Lockett Decl."), ¶ 2); Da Cunha Decl., ¶ 3, Ex. B (Deposition of Taj Lockett ("Lockett Depo.") at 58:14-60:7); Overton Decl., ¶ 11.) On April 6, 2010 and April 14, 2010, Ms. Lockett spoke with Wells Fargo representatives, who advised her that Plaintiffs' request for a loan modification was under review. (Lockett Decl., ¶¶

6-7.) On or about April 22, 2010, Wells Fargo denied the request for a modification. (*Id.*, ¶ 8; Overton Decl., ¶ 12, Ex. D.)

On or about June 11, 2010, Cal-Western, as Attorney-in-Fact for Wells Fargo, executed a Substitution of Trustee, in which it purported to substitute itself as Trustee for Fidelity. That document states that Wells Fargo is the "present beneficiary" under the Deed of Trust. It does not state that Wells Fargo is a servicing agent for the beneficiary (Wheeler Decl., ¶ 8, Ex. D ("Substitution of Trustee").)

On or about June 19, 2010, Cal-Western, through LSI Title Company ("LSI"), signed a Notice of Default, which was recorded on June 21, 2010. (*Id.*, ¶ 6, Ex. B.) The Notice of Default specifies that Cal-Western "is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a deed of trust dated December 12, 2007." (*Id.*)

Ms. Lockett attests that between June and August 2010, Wells Fargo representatives advised her that the request for a modification was in active review, and she provided Wells Fargo with additional information pertinent to Plaintiffs' request for a modification. (Lockett Decl., ¶¶ 11-14.) Mr. Overton, Wells Fargo's Vice-President of Loan Documentation, attests that Wells Fargo cancelled the requests for loan modifications on April 22, 2010, May 24, 2010, and August 5, 2010. (Overton Decl., ¶¶ 1, 12, Ex. D.)

On September 22, 2010, Cal-Western recorded a Notice of Trustee's Sale, which was scheduled for October 12, 2010. (Wheeler Decl., ¶ 9, Ex. E.) However, during the time the Plaintiffs attempted to obtain a loan modification, the parties postponed the Trustee's Sale three times: from October 12, 2010 to November 12, 2010; from November 12, 2010 to December 14, 2010; and from December 14, 2010 to January 13, 2011. (Wheeler Decl., ¶ 12, Ex. H.)

On October 20, 2010, Ms. Lockett spoke with a Wells Fargo representative named Jay. (Lockett Decl., ¶ 18; Locket Depo. at 135:17-23; Overton Decl., ¶ 13, Ex. E (Transcript of Recording dated October 20, 2010 ("10/20/10 Tr.")).) Ms. Lockett testified that Jay told her Plaintiffs were "preapproved for a loan modification with the terms of 30 years, monthly

payment of 2695 (principal and interest, taxes and insurance) to begin February 1, 2011, and a down payment of $5,000." (Lockett Depo. at 135:24-136:5.)

According to the transcript of the phone call, Jay stated that, with a down-payment of $5,000, to be paid before October 24, 2010, Plaintiffs pre-qualified for a loan modification, and he referenced a payment of approximately $2695.50, which would start in February 2011. (10/20/10 Tr. at 36:10-37:9, 38:13-24.) Jay also stated that "if" Plaintiffs "were approved for the modification, the delinquent payments will be added to [the] principal balance, and [the] interest rate and loan term may be adjusted." (*Id.* at 37:22-25.) Jay also stated that until Plaintiffs returned certain information, Wells Fargo would not "be able to determine if [they] qualify. Please remember that collection activity does continue during this process." (*Id.* at 38:10-12.)

On October 20, 2010, Wells Fargo sent Wright a letter in which it stated that: "this letter is not a guarantee or approval of the loan modification;" described the materials that would be required to continue the review; and advised Wright that "until you are approved for a modification, normal default servicing will continue which includes any foreclosure action that may be in process. Foreclosure action will not be placed on hold until you have returned the signed agreement and the required initial payment." (Overton Decl., ¶ 14, Ex. F; Docket No. 97, Declaration of Michael Wright ("Wright MSJ Decl."), ¶ 6, Ex. D-1.) According to Wright, the letter did not include an agreement to sign. (Wright MSJ Decl., ¶ 7.)

On October 21, 2010, Wright sent Wells Fargo $5,000. (Overton Decl., ¶ 16; Wright MSJ Decl., ¶ 7, Ex. E-1.) Wright also attests that he had previously provided Wells Fargo with much of the information it requested and that he included a recent pay stub with the $5,000. (Wright MSJ Decl., ¶ 7, Ex. E-1; *see also* 10/20/10 Tr. at 39:20-41:14 (discussing information provided by Plaintiffs).)

On November 10, 2010, Wells Fargo sent Wright a letter in which it stated that it would not be able to provide him with a loan modification, because he had not provided all of the information it needed. (Overton Decl., ¶ 16, Ex. G.) Although Plaintiffs ultimately provided Wells Fargo with the necessary information, on December 17, 2010, Wells Fargo sent Wright a

United States District Court
For the Northern District of California

letter, in which it advised him that Plaintiffs were not eligible for a loan modification, because it was "unable to get [them] to a modified payment amount that [they] could afford per the investor guidelines on [their] mortgage." (*Id.*, ¶17, Ex. H.)

On January 11, 2011, Ms. Lockett spoke with a Wells Fargo representative named Kevin about the Trustee's Sale scheduled for January 13, 2011. (Lockett Decl., ¶ 22; Overton Decl., ¶ 19, Ex. I (Transcript of Recording dated January 11, 2011 ("1/1/11 Tr.").) Ms. Lockett attested and testified that Kevin told her that the Trustee's Sale was not scheduled and that Plaintiffs needed to send more information to Wells Fargo. (Locket Decl., ¶ 22; Lockett Depo. at 175:19-23.) According to the transcript of the call, however, Kevin advised Ms. Lockett that the Property was in "active foreclosure" and a Trustee's Sale was scheduled for January 13, 2011. (1/11/11 Tr. at 5:13-21; *see also* Locket Depo. at 228:5-19.)

Kevin also advised Ms. Lockett that, because of the time frame involved, Wells Fargo could not conduct a further loss mitigation review and that she would need to contact the foreclosure department to request that the Trustee's Sale be postponed. Ms. Lockett responded "okay." (*Id.* at 16:6-23.) The foreclosure department advised Kevin that it would need updated documents before it could request a postponement. (*Id.* at 19:7-10, 20:21-22:9.) Kevin relayed that information to Ms. Lockett, and he also advised her that Wells Fargo could not guarantee that the request would be processed before the Trustee's Sale. Kevin then summarized the substance of the conversation, and he reiterated that: (1) there was a Trustee's Sale scheduled for January 13, 2011; (2) Plaintiffs' only option at that point was to request a postponement through the foreclosure department; (3) he could not guarantee that the request for a postponement would be granted. (*Id.* at 21:20-23:1, 24:9-25, 25:9-29:21, 33:10-34:9.)

Ms. Lockett called Wells Fargo on January 13, 2011, and she attests that she was advised the Trustee's Sale was halted. (Lockett Decl., ¶ 23.) Wells Fargo's "Consolidated Notes Log" reflects that, on that date, it advised Ms. Lockett that the Trustee's Sale had not been postponed. The information contained in the Consolidated Notes Log also suggests that, when Ms. Lockett called Wells Fargo after the Trustee's Sale, she was advised that she needed

to contact the foreclosure attorney. (Overton Decl., ¶ 20, Ex. J (Consolidated Notes Log at 2, 7).)

On January 13, 2011, Cal-Western executed an Assignment of Deed of Trust in favor of Freddie Mac, which was recorded on January 25, 2011. (Wheeler Decl, ¶ 13, Ex. I.) The Trustee's Sale went forward on January 13, 2011, and Freddie Mac purchased the Property. (*Id.*, ¶ 14, Ex. J.) Plaintiffs state that they did not learn that the Trustee's Sale had gone forward until January 18, 2011, and were not even aware a sale had been scheduled for January 13, 2011. (*See, e.g.*, Wright Depo. 7/25/12 at 161:13-163:9); Lockett Depo. at 217:3-12, Locket Depo. Ex. 15 ("We want to continue trying to get a loan modification but we cannot risk losing the house.").) The Consolidated Notes Log, however, reflect several calls on January 13, 2011, that appear to be from Plaintiffs, rather than Ms. Lockett. (Consolidated Notes Log at 30-31.)

**ANALYSIS**

Plaintiffs assert claims against Defendants for wrongful foreclosure, promissory estoppel, fraud, negligent misrepresentation, and violations of California Business and Professions Code Section 17200 (the "UCL Claim").[3] Plaintiffs move for summary judgment only on claims for wrongful foreclosure and violations of the UCL. Defendants cross-move for summary judgment on those claims, and they move for summary judgment on the claims for fraud, negligent misrepresentation and promissory estoppel.

**A. Applicable Legal Standard.**

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to, *inter alia*, depositions, documents, affidavits, or other materials. Fed. R. Civ. P. 56(c)(1)(A). A party may also show that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). An issue is "genuine" only if there is sufficient

---

[3] The Court previously dismissed Plaintiffs' claims for breach of contract, negligence, and declaratory relief. It also dismissed Plaintiffs' claims against LSI and Cal-Western. (*See* Docket No. 48.)

evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B. Evidentiary Issues.**

Relying on the sham affidavit rule, Plaintiffs ask the Court to disregard any evidence submitted by Defendants that Wells Fargo was acting as Freddie Mac's agent, because Wells Fargo and Cal-Western previously submitted declarations stating that Wells Fargo was the beneficiary under the Deed of Trust. (Plaintiffs' Opp. Br. at 3:18-21.) The Court denies this request. Even if Wells Fargo was not the actual beneficiary under the Deed of Trust, Defendants have consistently taken the position that Cal-Western was properly substituted as Trustee and, thus, had the power to conduct the Trustee's Sale. Thus, Defendants' agency argument is not inconsistent with the position Defendants have taken throughout this litigation.

Defendants, in turn, rely on Plaintiffs' allegations in the FAC to argue that Plaintiffs have admitted that Wells Fargo was acting as Freddie Mac's agent. (Docket No. 99, Defs. Reply at 2:9-21.) "Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). In their FAC, Plaintiffs alleged that "Wells Fargo acted as the servicer of the Loan that was assigned to Freddie Mac and was acting as the agent for and under the authority of the true beneficiary under the Deed of Trust - Freddie Mac." (FAC ¶ 87.) Plaintiffs also alleged that "[a]t all times relevant, Freddie Mac was the true owner and beneficiary of the Loan and Wells Fargo acted as Freddie Mac's authorized agent in servicing the Loan ...." (*Id.* ¶ 92.) Plaintiffs admit that Wells Fargo acted as "Freddie [Mac's] agent, in the sense that it was servicer of the" loan. (Plaintiffs' Reply Br. at 3:6-10.) They argue, however, that allegations cannot be construed as judicial admissions that Wells Fargo "was authorized to act and/or was acting as" Freddie Mac's agent "as beneficiary." (Plaintiffs' Reply Br. at 3:6-11.) For the reasons discussed below, the Court concludes that there remain disputed issues of fact over the scope of Wells Fargo's agency and these judicial admissions do not conclusively establish that Defendants are entitled to judgment in their favor on the wrongful foreclosure claim.

Plaintiffs also ask the Court to disregard Defendants' evidence regarding Ms. Lockett's qualifications. The Court sustains Plaintiffs' objections to that evidence on the basis that the evidence bears only on Ms. Lockett's credibility.

**C. The Court Denies the Cross-Motions for Summary Judgment on the Wrongful Foreclosure and UCL Claims.**

Plaintiffs argue that they are entitled to summary judgment on the wrongful foreclosure claim because: (1) Freddie Mac became the beneficiary under the Deed of Trust when it purchased their Promissory Note and Deed of Trust from Wells Fargo; (2) Freddie Mac was the only entity that had the power to substitute a trustee to effectuate a trustee's sale; (3) Freddie Mac did not substitute Cal-Western as Trustee; (4) Cal-Western was not authorized to commence the foreclosure proceedings; and, as a result; (5) the Trustee's Sale was void.

Defendants counter that Cal-Western was properly substituted as Trustee and assert that the Trustee's Sale was valid.

It is undisputed that Wells Fargo sold its interest in the Promissory Note to Freddie Mac in 2008. Plaintiffs do not contest the validity of the assignment of the Promissory Note from Wells Fargo to Freddie Mac. Although Wells Fargo and Freddie Mac did not execute the Assignment of Deed of Trust until January 13, 2011, that fact is immaterial. "The assignment of a debt secured by mortgage carries with it the security." Cal. Civ. Code § 2396; *see also Cockerell v. Title Ins. and Trust Co.*, 42 Cal. 2d 284, 291 (1954) ("Assuming for the moment that the assignment of the note, secured by the third trust deed, was a valid assignment, no further assignment of the deed of trust was necessary.") (citing Cal. Civ. Code § 1084); *Domarad v. Fisher & Burke, Inc.*, 270 Cal. App. 2d 543, 553 (1969) (deed of trust is "a mere incident of the debt it secures and that an assignment of the debt carries with it the security" and "is inseparable from the debt") (internal quotations and citations omitted). Therefore, Freddie Mac was the beneficiary under the Deed of Trust as of February 2008.

The crux of the parties' dispute is whether Cal-Western was the proper trustee at the time it began foreclosure proceedings. Under California law, a trustee may be substituted by the recording "of a substitution *executed and acknowledged by: (A) all of the beneficiaries under the trust deed, or their successors in interest*...." Cal. Civ. Code § 2934a(a)(1)(A) (emphasis added). In this case, the Deed of Trust contains a provision regarding substitution, and it provides that "Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder, *by an instrument executed and acknowledged by Lender* and recorded in the office of the Recorder of the county in which the Property is located."). (Deed of Trust at 16 § 24.) Although neither the statute nor the Deed of Trust expressly give another entity the right to "execute and acknowledge" a Substitution of Trustee, they also do not expressly preclude an attorney-in-fact from executing a Substitution of Trustee. *See Aceves v.*

*U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 232 (2011) (noting that statute does not preclude attorney-in-fact from signing substitution on behalf of beneficiary).[4]

According to the record, when Wells Fargo granted Cal-Western a limited power of attorney, it granted Cal-Western the power to execute and acknowledge Substitution of Trustee where Wells Fargo was either a beneficiary *or* the servicing agent for a beneficiary. (Wheeler Decl., Ex. A.) It is undisputed that Wells Fargo was servicing the loan on Freddie Mac's behalf, and Plaintiffs admit that Wells Fargo acted as Freddie Mac's agent in that respect. (Meyer Decl., Ex. A; FAC ¶¶ 87, 92.) However, the Court concludes that neither Plaintiffs nor Defendants have met their burden to show that the issue of the scope of Wells Fargo's agency can be resolved as a matter of law on this record. Rather, there remain disputed issues of fact as to whether Wells Fargo was authorized to Freddie Mac's agent for purposes of executing the Substitution of Trustee.

On the one hand, Wells Fargo's Vice-President of Loan Documentation attests that, "as the loan servicer, Wells Fargo was Freddie Mac's authorized agent for purposes of the non-judicial foreclosure process." (Overton Decl., ¶ 8.) On the other hand, Plaintiffs have submitted excerpts from Freddie Mac's Single Family Seller/Servicer Guide, which states that "[u]nder the Purchase Documents, the Servicer contracts with Freddie Mac as an independent contractor to service Mortgages for Freddie Mac. The Servicer is *not* Freddie Mac's agent or assignee." (Docket No. 96, Declaration of Phillip Vermont in Opposition to Motion for Summary Judgment ("Vermont Opp. Decl."), ¶¶ 3-5, Exs. 1-2.)

Accordingly, the Court DENIES the cross-motions for summary judgment on the wrongful foreclosure claim.

---

[4] Defendants rely on a number of cases in which MERS was the nominee of the original lender, and its successors, and was expressly granted the authority in the deed of trust to take a variety of actions, including substituting the trustee. *See, e.g., In re Cedano*, 470 B.R. 522, 532 (9th Cir. BAP 2012) ("Numerous cases have held that, as the nominee for the lender under a deed of trust, MERS has the authority to substitute a trustee"); *Bascos v. Federal Home Loan Mortgage Corp.*, 2011 WL 3157063, *5 (C.D. Cal. July 22, 2011) (same, citing cases). The Court does not find these cases helpful, because this is not a case where MERS was named as nominee, and, as noted, the Deed of Trust does not expressly identify any other agent who might be authorized to act on the beneficiary's behalf.

United States District Court
For the Northern District of California

**D. The Court Grants Defendants' Motion for Summary Judgment on the Fraud, Negligent Misrepresentation, and Promissory Estoppel Claims.**

Plaintiffs' claims for fraud, negligent misrepresentation, and promissory estoppel each arise out of Plaintiffs' allegations that: (1) Wells Fargo told Plaintiffs they were pre-qualified for a loan modification, with specific terms; (2) Wells Fargo would not foreclose if Plaintiffs sent it $5,000; and (3) Wells Fargo would negotiate in good faith to modify the loan.[5]

**1. Fraud and Negligent Misrepresentation.**

In order to state a claim for fraud, Plaintiffs must allege facts showing that the Defendants: (1) made a misrepresentation to Plaintiffs; (2) Defendants knew the representations was false; (3) Defendants intended to induce Plaintiffs to rely on the misrepresentation; (4) Plaintiffs justifiably relied on the misrepresentation; and (5) damages. *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 93 (2001) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)). "The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance." *Caldo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004).

Defendants move for summary judgment on the basis that Plaintiffs cannot show that Defendants made any misrepresentations to them or that they relied on any such representations to their detriment. At the hearing, Plaintiffs clarified that, in January 2011, they would have cured their default had they known Defendants intended to proceed with the foreclosure and they put forth evidence that supports their ability to do so. (*See* Wright MSJ Decl., ¶¶ 10, 12-13, Ex. G-1; *see also* Lockett Depo., Ex. 15.) Although Plaintiffs have put forth evidence that would create a genuine issue of disputed fact on the element of detrimental reliance, the Court finds they have not met their burden to establish that Defendants made any misrepresentations to them.

---

[5] Plaintiffs seek to hold Freddie Mac liable on these claims on the basis that Wells Fargo "acted as Freddie Mac's authorized agent in servicing the loan." (*See* FAC ¶¶ 92, 95, 102.) In light of this theory, although it is undisputed that the only communications Plaintiffs had were with Wells Fargo, the Court shall use the term "Defendants" in its analysis. In addition, there are no disputes about the scope of Wells Fargo's agency on these claims.

**1. Representations Regarding a Loan Modification.**

At the hearing, Plaintiffs acknowledged that Defendants' statements about the loan modifications were conditional, and there is no evidence in the record from which a reasonable juror could find that Defendants stated to Plaintiffs that they would modify the loan. (*See, e.g.*, 10/20/10 Tr. at 37:22-25, 38:10-12; Wright MSJ Decl., Ex. D-1; Locket Depo. Ex. 15 ("We need a written agreement before sending them any more money.").)

**2. Representations Regarding Foreclosure Proceedings and Good Faith Negotiations.**

Plaintiffs rely on a letter dated October 20, 2010, to support their claim that Defendants promised not to foreclose so long as they were in active negotiation for a loan modification, if Plaintiffs sent a payment of $5,000. (Wright MSJ Decl., ¶¶ 6, 9, Ex. D-1.) This letter is similar to a letter that Defendants sent Plaintiffs in April 2010. (Wright TRO Decl., ¶ 8, Ex. C.) In those letters, Defendants stated that "Please note that *until you are approved for a modification*, normal default servicing will continue *which includes any foreclosure action that may be in process.* Foreclosure action will not be placed on hold until you have returned the signed agreement and the required initial payment." (*Id.*; Wright MSJ Decl., Ex. D-1 (emphasis added).) Contrary to Plaintiffs' argument, these letters suggest that Defendants could - and would - proceed with foreclosure "until" Plaintiffs were "approved for a modification." It is undisputed that Defendants never approved a modification for Plaintiffs' loan. Moreover, there is evidence in the record that Plaintiffs understood that it was possible that Defendants would sell the Property. In an email dated January 17, 2011, Wright advised Lockett that "[w]e need a written agreement before sending them any more money. Preferably one saying they are not going to sell the house." (Locket Depo., Ex. 15.)

Plaintiffs also argue that Defendants stated that they would negotiate with the Plaintiffs in good faith. The evidence in the record suggests that, as of December 2010, Defendants determined that Plaintiffs would not qualify for a loan modification. (Overton Decl., ¶ 17, Ex. H.) Plaintiffs do not put forth any evidence that would contradict that decision. The evidence in the record also shows that up until December 2010, and for a short time thereafter,

Defendants attempted to work with Plaintiffs regarding their request for a loan modification. Plaintiffs have not pointed this Court to any evidence from which a reasonable juror could conclude that the Defendants were not negotiating in good faith.

Finally, Plaintiffs contend that Defendants told Ms. Lockett that the Trustee's Sale scheduled for January 13, 2011 would not go forward. Wright attests that, on January 24, 2011, he was told that Wells Fargo had granted the request for a postponement on January 18, 2011, *after* the Trustee's Sale had gone forward. (Wright TRO Decl., ¶ 25.) In her declaration in support of Plaintiffs' application for a temporary restraining order, Ms. Lockett attested that a representative named Kevin told her the Trustee's Sale would not go forward. However, the transcript of the recorded call shows that Kevin told her he could not guarantee that the request for a postponement would be acted upon before the Trustee's Sale. (*See* 1/11/11 Tr. at 33:25-34:1.) Ms. Lockett acknowledged in her deposition that the conversation did not reflect any statement that the foreclosure sale had been postponed. (Locket Depo. at 228:8-14.) Defendants also submitted the Log Notes from January 13, 2011, which reflect that Defendants advised Ms. Lockett that the Trustee's Sale had not been postponed. (Overton Decl, Ex. J.) In her declaration, Ms. Lockett attested that she had several conversations with Defendants' representatives and that one of them told her the January 13, 2011 sale would not go forward. (Lockett Decl., ¶¶ 22-23.) As a rule, in order to raise a fact issue for trial, the non-moving party must present more than a "mere ... scintilla of evidence" to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252. The Court concludes that Plaintiffs have not put forth evidence from which a reasonable juror could conclude that Defendants agreed not to go forward with the Trustee's Sale scheduled for January 13, 2011.

For the reasons set forth above, the Court concludes that Plaintiffs have not met their burden to show that there are genuine issues of material fact in dispute that Defendants made any misrepresentations to them. Accordingly, Defendants are entitled to summary judgment on the fraud and negligent misrepresentation claims.

**2. The Promissory Estoppel Claim.**

To state a claim against the Defendants for promissory estoppel, Plaintiffs must allege facts showing that: (1) Defendants made a promise that was clear and unambiguous in its terms; (2) Plaintiffs relied on that promise; (3) Plaintiffs' reliance on the promise was reasonable and foreseeable; and (4) Plaintiffs were injured as a result of their reliance on the promise. *Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 225 (2011). Defendants move for summary judgment on this claim on the basis that: (1) Plaintiffs cannot show a clear and unambiguous promise to either modify their loan or postpone the Trustee's Sale; and (2) Plaintiffs cannot establish they relied on any alleged promise to their detriment.

In the *Aceves* case, upon which Plaintiffs rely, the court concluded that the plaintiff had stated a claim for promissory estoppel on the basis that the defendant represented to her that it would work to modify her loan if she did not convert a Chapter 7 bankruptcy proceeding into a Chapter 13 bankruptcy proceeding. *Id.* at 226-27. The court found that promise was clear and unambiguous and was sufficient to survive a demurrer. With respect to the element of reliance, the court noted that in a Chapter 13 bankruptcy proceeding, plaintiff would have the option of retaining the property. The court also noted that if the defendant worked with her to modify the loan, she could obtain more favorable treatment from the defendant than she could during bankruptcy proceedings, providing the plaintiff "with a compelling reason to opt for negotiations with the bank instead of seeing bankruptcy relief." *Id.* at 227-228. Based on those facts, the court concluded the plaintiff alleged facts to show it was reasonable and foreseeable for her to have relied on the defendants' representations. *Id.*

The Court finds this facts and procedural posture of this case distinguish it from *Aceves*. First, in *Aceves*, the court resolved a demurrer, rather than a motion for summary judgment. Second, the *Aceves* court concluded the plaintiffs allegations were sufficient to show that defendants agreed to "engage in negotiations toward a solution of her loan problems," if she stopped pursuing relief in bankruptcy proceedings, and the issue of whether it fulfilled that promise turned on whether "it did or did not negotiate." *Id.* The court also emphasized the many rights and benefits the plaintiff gave up by choosing to forego the bankruptcy proceedings. *Id.*

United States District Court
For the Northern District of California

Here, in contrast, there is no evidence that Defendants asked the Plaintiffs to forego any particular course of conduct as a pre-requisite to negotiations. The Court also has considered the letter dated October 20, 2010. As discussed above, Plaintiffs must present more than a "mere ... scintilla of evidence" to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252. Although Plaintiffs did send Defendants $5,000, the evidence shows that the Defendants did negotiate with Plaintiffs on a loan modification, until they determined the Plaintiffs would not qualify for one. Even assuming Plaintiffs have set forth sufficient facts to show detrimental reliance, for the reasons set forth above in connection with the fraud and negligent misrepresentation claims, the Court finds Plaintiffs have not met their burden to overcome Defendants' motion for summary judgment on the claim for promissory estoppel.

## CONCLUSION

For the foregoing reasons, the Court DENIES the parties' cross-motions for summary judgment on the wrongful foreclosure claim and UCL claim, and it GRANTS Defendants' motion for summary judgment on the fraud, negligent misrepresentation, and promissory estoppel claim.

The parties' pretrial filings are due on January 14, 2013, and by separate order the Court shall refer this matter to a Chief Magistrate Judge James for purposes of conducting a further settlement conference in advance of the trial date.

**IT IS SO ORDERED.**

Dated: December 5, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE